POMEROY, Plaintiff, *v.* STATE BOARD OF EQUALIZA-
TION et al., Defendants.

(No. 7,433.)

(Submitted April 27, 1935.   Decided May 4, 1935.)

[45 Pac. (2d) 316.]

*Mr. J. R. Wine,* for Plaintiff, submitted a brief and argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Jeremiah J. Lynch,* First Assistant Attorney General, for Defendants, submitted a brief; *Mr. Lynch* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an original proceeding, instituted by V. W. Pomeroy against the State Board of Equalization, the members of the board, and Raymond T. Nagle, as Attorney General of the state of Montana, to determine whether or not the plaintiff, as an employee of the Reconstruction Finance Corporation, can be required to pay an income tax on his income for the year 1934, derived from salary as such employee.

The complaint alleges that the plaintiff is a citizen and a resident taxpayer of the state, and has been an employee of the Reconstruction Finance Corporation for the past two years, during which time he has been "in the employ of the United States"; that his salary is paid monthly by the United States and received by him from the United States by check drawn on the treasury and by the Treasurer of the United States from public funds raised and accumulated by public taxation. It is further alleged that the Reconstruction Finance Corporation is a corporation organized and existing by virtue of an Act of Congress (15 U. S. C. A., secs. 601–617), and has a capital of $500,000,000, all of which is subscribed by the United States from funds accumulated by public taxation; that the management of the corporation is vested in a board of directors consisting of the Secretary of the Treasury and six members appointed by the President. It is further alleged that the plaintiff has been required to make a return to the defendant board, showing the salary he received during the year 1934, and thereon the board has computed the tax which plaintiff must pay under the law, and that the board will pro-

ceed to collect the same unless restrained. Upon this complaint there was issued an order to show cause why the board should not be enjoined and prohibited from collecting the tax.

On behalf of all defendants the Attorney General filed a ▇ demurrer, based on the ground that the complaint does not state facts sufficient to warrant the relief sought, or any relief whatever, and, on the day set for hearing, the matter was presented on its merits and duly submitted for determination. The demurrer, of course, admits the truth of all facts properly pleaded, but does not admit mere legal conclusions drawn by the pleader.

The Attorney General concedes that plaintiff is an employee of the Reconstruction Finance Corporation, but does not concede that he is an employee of the United States, and the demurrer does not admit the latter fact, as the statement to that effect found in the complaint is an allegation of a conclusion of law by the pleader.

The controlling question for solution here is as to the right ▇▇ of the defendant board to collect the disputed tax from the plaintiff, and this question must be determined by first solving the question whether or not the plaintiff, as an employee of the Reconstruction Finance Corporation, is in fact an employee of the United States; if so, his salary, received from the United States, is exempt.

This result is compelled, not because the state cannot tax the salary of an official of the United States by reason of the mutual relation between the two governments (see *Poorman* v. *State Board of Equalization,* post, p. 543, 45 Pac. (2d) 307), but because section 7 of Chapter 181, Laws of 1933 (our Income Tax Law), excludes such salaries from inclusion in the "gross income," which is the basis for computing the "net income" on which a tax must be paid. It follows that the fact that our income tax is not a tax on salaries, as held in the *Poorman Case,* is immaterial to the question of liability presented in the instant case.

Section 7 of the Act declares that "the term 'Gross Income'; (1) Includes gains, profits and income derived from salaries,

\* \* \* (2) but does not include the following items \* \* \* (f) salaries, wages and other compensations received from the United States or officials or employees thereof, including persons in the military or naval forces of the United States."

It is first contended that this provision contains two classes of exemptions, (1) all salaries, etc., received from the United States, and (2) officials and employees of the United States, and that this plaintiff is exempt if he receives his salary from the federal government, even though he is neither an official nor employee thereof. This contention cannot be maintained, for the reason that the use of the co-ordinate particle "or" between the so-called two classes, thus, apparently, denoting the alternative, is palpably a typographical error; the word should be the preposition "of," denoting "belonging to," as we shall demonstrate.

In sustaining the constitutionality of our Income Tax Law, we said that it "very closely approximates the Idaho Act," pointed out minor differences, and showed that they were fundamentally the same. (*O'Connell v. State Board of Equalization*, 95 Mont. 91, 25 Pac. (2d) 114.) However, in composition and phraseology, our Act and that of Idaho are, in many particulars, quite dissimilar; the Idaho Act contains no such provision as the one under consideration.

The Illinois Act, to which reference is made in the *O'Connell Case*, is, almost in its entirety, identical with ours, giving rise to the supposition that we copied their Act, with only such changes as differing conditions warranted from that Act; but it may have been copied from the New York Act, or the "model" drafted in 1921 for the National Tax Association, as each of the three bears a striking similarity to our Act. The provision under consideration is identical in the four drafts, except that in the "model," and in the New York Act, the preposition "by" is used, preceding the noun "officials," and in the Illinois Act the preposition "of" precedes the noun; whereas our Act employs the particle "or." It is, therefore, reasonable to presume that our Act was copied from the Illinois Act, and that the typist struck the "r" key instead of the "f"

key, and, further, that this typographical mistake was not discovered on comparison after copying, if a comparison was had. To one familiar with the typewriter, such an error is readily understandable; the "r" key lies just above the "f" key, and reaching a fraction of an inch too far will record the "r" instead of the "f."

We see in the provisions of section 7, above, no indication of a legislative intent to exempt all federal employees from the payment of the tax on income from any and all sources. Rather it is clear that the legislature merely intended to exclude from the computation of "gross income" the salaries "of" officials or employees of the United States. Words may be changed in a statute in order to compel its conformity with the intention of the legislature. (*State ex rel. Hahn* v. *District Court,* 83 Mont. 400, 272 Pac. 525.) We will, therefore, consider the provision as reading, as does the Act of Illinois, "salaries * * * of officials or employees of the United States."

The fact that the plaintiff received his pay check from the United States treasury is not controlling, as the funds of the corporation are directed to be deposited there and paid out by the treasurer upon warrants issued to him by a duly authorized agent of the corporation. (Sec. 607 of the Act, 15 U. S. C. A.) On the face of the check issued for plaintiff's salary, and in evidence here, appear the words "Reconstruction Finance Corporation." Checks of this nature are issued monthly to many persons not employees of the United States, including pensioners of all our wars and their surviving dependents.

The question, then, is: Is the plaintiff an employee of the United States? The Attorney General contends that he is not, under the decisions of the Supreme Court of the United States dealing with the United States Shipping Board Emergency Fleet Corporation. Counsel for the plaintiff asserts that such decisions are not in point because the Reconstruction Finance Corporation was created directly by Act of Congress, while the Fleet Corporation was incorporated, by authority of Congress, but under the laws of the District of Columbia;

that the Fleet Corporation is a private corporation with authority to sell stock to private individuals which the United States merely authorized to purchase not less than fifty per cent. of the stock, although it did, in fact, take all of the stock. Counsel states that "the War Finance Corporation (Act of Congress, April 5, 1918, see 15 U. S. C. A., secs. 331 et seq.) *was* and the Tennessee Valley Authority (Act of Congress, May 18, 1933, 16 U. S. C. A., secs. 831–831cc) *is* strikingly similar in many respects" to the Reconstruction Finance Corporation, and that the basic distinction between these corporations "and all other corporations used as governmental agencies is found in the fundamental difference between a corporation created by Congress for the government's public purposes, without transferable shares and wholly owned by the United States, and a corporation of a board or instrumentality of the government organized by the intermediate authority under general law with transferable shares, for the purpose of facilitating the endeavors of the board or commission. The path between the two types of concerns is narrow but well defined."

Counsel contends that the first class, including the Reconstruction Finance Corporation, are "public agencies," each being "a direct agent for the government itself"; while the second class are but private corporations. We do not find such a distinction drawn by the Supreme Court of the United States in the cases mentioned, nor do the distinctions which counsel draws seem to have been considered of any importance by the court in reaching its decision that employees of the Fleet Corporation are not agents, and consequently not employees, of the United States.

In determining that an employee of the Fleet Corporation was not an agent of the government, the controlling facts were stated by the court to be that: "As authorized by the Act of September 7, 1916, 39 Stat. 728, the United States Shipping Board caused the Fleet Corporation to be organized (April 16, 1917) under the laws of the District of Columbia with $50,000,000 capital stock, all owned by the United States, and it

became an operating agency of the board.'' Later, the President directed that the corporation should have and exercise a specified portion of the power and authority in respect to ships, granted to him by the Act of June 15, 1917 (Chap. 29, 40 Stat. 182), and he likewise authorized the Shipping Board to exercise through it another portion of such power and authority. (See *The Lake Monroe,* 250 U. S. 246, 252, 39 Sup. Ct. 460, 63 L. Ed. 962.) The corporation was controlled and managed by its own officers, and appointed its own servants and agents who became directly responsible to it. Notwithstanding all its stock was owned by the United States, it must be regarded as a separate entity. ''Its inspectors were not appointed by the President, nor by any officer designated by Congress; they were subject to removal by the corporation only and could contract only for it. In such circumstances we think they were not agents of the United States. \* \* \* Generally agents of a corporation are not agents of the stockholders; \* \* \* [the Act] provided, that the \* \* \* Fleet Corporation shall be considered a government establishment for the purposes of this section.'' (*United States* v. *Strang,* 254 U. S. 491, 41 Sup. Ct. 165, 166, 65 L. Ed. 368.)

The court has held that the Fleet Corporation is ''an instrumentality of the government'' (*United States* v. *Walter,* 263 U. S. 15, 44 Sup. Ct. 10, 11, 68 L. Ed. 137), exercising governmental functions, but yet a private corporation ''government owned,'' whose employees are not agents of the government; nor can the government be compelled to audit claims against the corporation, although all the assets of the corporation have been assigned to the United States. (*United States ex rel. Skinner & Eddy Corp.* v. *McCarl,* 275 U. S. 1, 48 Sup. Ct. 12, 72 L. Ed. 131.) In the *Skinner Case* the court clearly indicates that there is no distinction, in this regard, between the various governmental corporations, for it classes with the Fleet Corporation the War Finance Corporation, of which the Reconstruction Finance Corporation is, in effect, but a continuation, the Inland Waterways Corporation, the

Federal Intermediate Credit Banks, and many other concerns, all of which, while instrumentalities of government exercising a part of sovereignty and performing governmental functions, are entities distinct from the United States and from any of its departments or boards.

For these reasons it is held that a claim in bankruptcy made by the Fleet Corporation in its own name as "an instrument of the Government" is not entitled to preference as a claim of the United States (*Sloan Shipyards Corp.* v. *Fleet Corporation,* 258 U. S. 549, 42 Sup. Ct. 386, 66 L. Ed. 762) ; and, clearly indicating that the Fleet Corporation decisions are applicable to the question before us, that court has recently held that the Reconstruction Finance Corporation stands in the same position with reference to the bankruptcy law, declaring that: "The Reconstruction Finance Corporation Act creates a corporation and vests it with designated powers. Its entire stock is subscribed by the government, but it is none the less a corporation, limited by its charter and by the general law. The Act does not give it greater rights as to the enforcement of its outstanding credits than are enjoyed by other persons or corporations in the event of proceedings under the Bankruptcy Act." (*Continental Bank & Trust Co.* v. *Chicago, R. I. & P. R. Co.,* 294 U. S. ——, 55 Sup. Ct. 595, 609, 79 L. Ed. ——.)

In all of the government owned corporations under consideration the United States is the stockholder, but the employees of the corporation are, as in other corporations privately owned, the agents and employees of the corporation and not of the stockholder or stockholders. In the *Strang Case,* above, the court said: "Apparently this was one reason why Congress authorized organization of the Fleet Corporation." So, also, it may be one reason why Congress incorporated the Reconstruction Finance Corporation.

A case very much in point is that of *Helvering* v. *Powers,* 293 U. S. 214, 55 Sup. Ct. 171, 79 L. Ed. ——. Massachusetts provided by law for the public operation of the Boston Elevated

Railway Company, by a board of five trustees appointed by the Governor; the trustees were forbidden to hold any stock in the company and were inducted into office as public officers, removable by the Governor. The Supreme Court of the United States held that, although the trustees were administrative agents of the commonwealth, the particular enterprise was a business enterprise, and the trustees were, therefore, not exempt from the Federal Income Tax.

Our attention has been called to two provisions relative to employees of the corporation, the first being that "nothing * * * in this Act shall be construed to prevent the employment and compensation as an employee of the corporation of any officer or employee of the United States in any board, commission, independent establishment or executive department thereof"; the second, that "it shall have power * * * to select, employ and fix the compensation of * * * employees, attorneys and agents, as shall be necessary for the transaction of the business of the corporation, without regard to the provisions of other laws applicable to the employment and compensation of officers and employees of the United States." These provisions would indicate that Congress considered the officers and employees of the corporation in a sense officers and employees of the United States, but not in the sense contemplated by "other laws" forbidding those employed in one department of the government to accept or be given employment in another branch of the government. The employees of the corporation are employees of the government in the sense that they are employed in an establishment which is an instrumentality of the government, but which is owned by the government in its proprietary, rather than its governmental, capacity and then not in outright ownership, but as the stockholder in the corporation. These employees are the employees, not of the stockholder, but of the corporation.

For the reasons stated, we hold that the plaintiff is not entitled to exclude his salary as an employee of the Reconstruction Finance Corporation from the computation of his "gross

income.'' It follows that the demurrer should be, and is, sustained. Proceeding dismissed.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.