# DALLAS RAILWAY & TERMINAL CO. v. WALSH et al.

## No. 2184.

Court of Civil Appeals of Texas. Eastland.

Oct. 31, 1941.

Rehearing Denied Nov. 21, 1941.

Burford, Ryburn, Hincks & Charlton, of Dallas, for appellant.

Dan P. Johnston and Gillen, Francis, Gallagher & Bean, all of Dallas, for appellees.

FUNDERBURK, Justice.

James M. Walsh, Jr. (hereinafter referred to as Walsh), an employee of Schaeffer-Weaver, Inc. (hereinafter called Weaver Funeral Home), while riding in an ambulance owned and operated by said employer and driven by another employee, was injured in a collision between the ambulance and a bus operated by Dallas Railway & Terminal Company (hereinafter called Railway). The collision occurred in Dallas at the intersection of two paved streets, Lemmon Avenue, running north and south, and Oak Grove Avenue, running east and west.

Traders & General Insurance Company (hereinafter called Insurer), compensation insurance carrier for Weaver Funeral Home paid Walsh compensation for his injuries.

Walsh brought suit nominally against both Railway and Insurer seeking to recover from the former damages for alleged negligence. No cause of action was alleged against Insurer, but as to it plaintiff prayed that "defendant Traders & General Insurance Company be duly cited to appear so that it may set up by way of subrogation the sums expended by it under the Workmen's Compensation Law on account of plaintiff's injuries * * *." Insurer filed a pleading, in part purporting to be an answer to plaintiff's petition, but also in part consisting of a cross-action against Railway wherein plaintiff's allegations of a cause of action were adopted and judgment prayed for the amount by it paid to plaintiff.

Walsh alleged twelve grounds of recovery, or, in other words twelve acts or omissions as negligence and proximate causes of Walsh's injuries, only one being alleged in the alternative to another or others. In addition to said twelve grounds of recovery, he alleged another, the thirteenth, based upon the doctrine of discovered peril. Railway, in addition to general and special exceptions and general denial, pleaded numerous acts and omissions of plaintiff as constituting negligence and proximate cause of his injuries.

In a jury trial 91 special issues were submitted. Upon the verdict rendered thereon in favor of Walsh and Insurer and based also upon a remittitur, the court gave judgment for $8,276, of which $1,553.45 was awarded to Insurer. Railway has appealed.

Railway (appellant) has briefed 25 propositions under 48 assignments of error. There would appear to be about as much reason for discussing any particular one proposition as another. To discuss them all would involve the writing of an opinion of unreasonable length. We, therefore, have decided to discuss a few questions, deemed to be raised and considered to be controlling, without specific reference to particular assignments of error or propositions as appearing in the brief.

■ There is a question of whether the driver of the ambulance in which Walsh was riding at the time of the collision was under any duty imposed by *statute* or *ordinance* to stop at the "stop" sign on Oak Grove Avenue, where the collision occurred. The only applicable statute, if any, so far as we know, reads thus: "Except where controlled by such ordinances or regulations enacted by local authorities, as are permitted under the law, the operator of a vehicle approaching an intersection on the public highway shall yield the right-of-way to a vehicle approaching such intersection from the right of such first named vehicle." P.C.(1925) Art. 801(E). Obviously, whether this statute affected the rights or duties of the parties, or any question of liability, is dependent wholly upon whether there was, in effect, any valid ordinance of the City of Dallas making provision to the contrary.

It appears there was such an ordinance. It provided, in effect, subject to certain exceptions, that a vehicle on Oak Grove Avenue approaching an intersection of that street with Lemmon Avenue shall yield the right of way to a vehicle on Lemmon Avenue approaching such intersection from either direction. A "Stop" sign on Oak Grove Avenue at each entrance to its intersection with Lemmon Avenue was an ever present reminder to all drivers of vehicles of such general duty. The driver of the ambulance was under duty to stop before entering the intersection, unless such duty was varied by some exception to the provisions of said ordinance.

■ So far as we know there was no statute operating as a limitation upon the power of the local government of the City of Dallas, by ordinance, to make such an exception. Article 801(N) of the Penal Code does not operate as such limitation because, insofar as it relates to *ambulances* they are "police ambulances." The ambulance in question was not shown to be a "police ambulance." The only statute which may have reference to an ambulance of the class in question is P.C.(1925) Art. 791, Vernon's Ann.P.C. art. 791, which excepts from the provisions of other articles relating to the *speed* of motor vehicles upon public highways "fire patrols or motor vehicles operated by the fire department of any city, town or village responding to calls" and to "police patrols or physicians and/or *ambulances responding to emergency calls.*" (Italics ours.) This statute, as is apparent from a simple reading of it, has no relation to and, therefore, constitutes no limitation upon, the power of the City of Dallas to require ambulances to stop at particular street intersections and/or to prescribe exceptions to such requirement. The subject of the statute is the rate of speed which is an entirely different subject-matter from that of an ordinance prescribing the duty of the drivers of motor vehicles to stop before entering street intersections. Lamar & Smith v. Stroud, Tex.Civ.App., 5 S.W.2d 824. Hence, it seems plain that in some one or more ordinances must be found the exceptions, if any, to the general provisions of the ordinance requiring motor vehicles to stop before entering particular intersections.

■ Ordinance No. 2808, pleaded and introduced in evidence by Walsh, in sec. 1 of Art. 1 thereof, defines "Authorized Emergency Vehicles" as follows: "Vehicles of the fire department, police vehicles and such ambulances and emergency vehicles of municipal departments or public service corporations as are designated or authorized by the Chief of Police of the City of Dallas." Section 1, of Art. 2, of said ordinance provides that "Authorized emergency vehicles" shall be subject to the general requirement with specified exceptions, one of which, and the only one material in the present inquiry, being to authorize the driver of such a vehicle to "proceed past a * * * stop signal or stop sign, but only after slowing down as may be necessary for safe operation."

In our opinion, the ambulance of Weaver Funeral Home was not shown by any evidence to be an ambulance of a municipal department or a public service corporation, and, therefore, was not shown to be an "Authorized Emergency Vehicle." We are also of the opinion that the facts alleged as supporting the conclusion that said ambulance was an Authorized Emergency Vehicle did not support such conclusion, and

the exceptions of Railway to plaintiff's pleading presenting that point should have been sustained.

Further, even if said ambulance was an authorized emergency vehicle by the single test that it did belong to a public service corporation, there was nevertheless no evidence sufficient to show that it had been "designated" or "authorized" as such by the Chief of Police.[1]

■ Walsh and Insurer sought to show such designation or authorization by a practice or customary operation under the terms of Ordinance No. 2648, amending Ordinance 2624. But, in our opinion, Ordinance 2648 does not affect the question. That ordinance was not intended, we think, to repeal section 1, Art. 1 of Ordinance 2808. It does not purport to do so, nor is there any necessary conflict between it and said other ordinance. The provision of Ordinance 2648 to the effect that a "Dispatcher" therein provided for to be designated by the Director of Public Health, "shall authorize the first ambulance operator who calls reporting an emergency call to make said call" etc. was, in our opinion, never intended to constitute any ambulance an authorized emergency vehicle which was not such under the definition prescribed in Ordinance No. 2808. Rather, we think, Ordinance 2648 presupposed that only operators of authorized emergency vehicles would call for permission to make emergency calls. The ordinance purports to vest no discretion in the Dispatcher to permit or not permit the first operator of an ambulance reporting an emergency call to respond thereto. Certainly we think the ordinance does not reasonably lend itself to the construction that if an operator of any ambulance not under the definition of an authorized emergency vehicle should call the Dispatcher for permission to make an emergency call and if given such permission that that in and of itself constituted the ambulance an Authorized Emergency Vehicle, even though it was not a vehicle of a municipal department or public service corporation and/or had never been otherwise designated or authorized by the Chief of Police as an Authorized Emergency Vehicle.

■ Furthermore, we are not impressed with the contention that the Chief of Police by mere acquiescence in the practice by which the Dispatcher permitted vehicles to make emergency calls thereby authorized such vehicles to operate as Authorized Emergency Vehicles. In such sense, it could be said that the Chief of Police authorized the thousand and one violations of speed laws and other traffic rules which, as a matter of common knowledge, are continually taking place. Without undertaking to define its precise character, we think that, assuming the validity of the purported delegation of power to the Chief of Police, it was at least necessary for that officer to designate or authorize emergency vehicles by some character of affirmative action. A number of Railway's assignments of error are sustainable as complaining of procedure contrary to these conclusions.

Disregarding mere duplications in substantial subject-matter the record justifies the statement that the judgment must depend for essential support upon the establishment of one or more of the following grounds of recovery, namely: (1) exceeding rate of speed of 20 miles per hour, (2) failure to keep a proper lookout, and (3) failure to apply brakes as bus entered intersection. The effect of the finding of the essential elements of these three grounds of recovery against Railway and in favor of Walsh and Insurer should be considered in connection with other matters found by the special verdict of the jury as follows: (a) That the bus entered the intersection where the collision occurred prior to the time the ambulance entered; (b) That although the siren on the ambulance was being sounded, the driver of the bus did not hear it. (There was no finding of negligence based upon failure to hear it.) (c) That the "realization on the part of the operator of the bus in question that James M. Walsh, Jr. occupied a position of peril prior to the collision was" not "in time so that in the exercise of ordinary care in the use of all the means at hand said operator could have avoided the collision without injury to himself or his bus or the passengers on said bus." (d)

---

[1] It seems to us that the attempted delegation to the Chief of Police of the power to designate or authorize ambulances of a municipal department or public service corporation, and thereby confer upon the operators thereof the exceptional right to proceed past stop signs into street intersections may be of very questionable validity on constitutional grounds. But that question is unimportant in the instant case, and we need not decide it. Even if such exception be void, the result would not affect our conclusions as stated.

That the driver of the ambulance failed to keep a proper lookout. (e) That the driver of the ambulance was operating it "at the time and on the occasion in question at a greater rate of speed than was reasonable under the surrounding circumstances." (f) That the driver of the ambulance failed to come to a full stop immediately before entering the intersection (or to· yield the right of way to the bus). (g) That the ambulance was operated at a rate of speed in excess of 20 miles per hour. (h) That "at the time and on the occasion in question the driver of the bus in question was" not "acting under an emergency." (i) That the injuries of Walsh were not caused by an "unavoidable accident."

 The evidence established conclusively, we think, that if the driver· of the bus failed to keep a proper lookout, and if that was negligence, such negligence was not a proximate cause of Walsh's injuries. A proximate cause must, first of all, be a cause. There was a total absence of any evidence to show that had the driver of the bus kept a proper lookout, he could have seen the approach of the ambulance before the time which, according to the uncontroverted evidence, he did see it. There was a high hedge intervening, neither through which, nor over it, could the bus driver see the ambulance until he was entering the intersection. Hence, as a matter of law, we think any failure to keep a proper lookout is affirmatively shown not to have caused the injuries.

 For another reason such ground of negligence cannot afford support for the judgment. The jury found the failure of the bus driver to apply his brakes was a proximate cause of Walsh's injuries. It is necessarily implicit in such finding that the brakes could have been applied and that had they been applied the collision would have been avoided. The bus driver, so far as the situation appeared to him, having the right of way over the intersection, was under no duty to apply his brakes until he discovered the approach of the ambulance and realized the danger of a collision. The conduct of the bus driver is, we think, to be viewed just the same as if the siren on the ambulance had not been sounded. No ground of negligence was established based on the failure of the bus driver to hear the siren. Under all the evidence the duty to apply the brakes did not arise until the approach of the ambulance was discovered. If, therefore, the bus driver's failure to apply the brakes was a proximate cause of the collision, then, as a matter of law, his previous failure to keep a lookout was not. Manifestly, if notwithstanding his failure to keep a proper lookout he did discover the ambulance, and its fast approach, in such time that by the exercise of ordinary care in applying his brakes he could. and would have avoided the collision, then his failure to apply the brakes was the proximate cause and the previous failure to keep a proper lookout was no cause at all. Thus, we are forced to the conclusion that for these two reasons the judgment has no support based upon failure of the bus driver to keep a proper lookout.

 The jury also found that the bus driver was exceeding 20 miles per hour, which was a proximate cause of the collision. We may assume that such ground of recovery, considered alone, sufficiently supports the judgment. Implicit in the verdict as relates to that ground of recovery is that the excess speed (over 20 miles per hour) disabled the bus driver to stop or retard the speed of the bus sufficiently to avoid the collision. If excess speed had no such effect, then however negligent it may have been it was not the cause of the collision. But just as for two reasons failure to keep a proper lookout was not a proximate cause of the injuries, for one of said reasons excess speed was not a proximate cause if effect be given to the verdict upon the ground of recovery relating to the failure of the bus driver to apply the brakes. If,. as found by the jury, failure to apply the brakes was a proximate cause of the collision, then, as a matter of law, under the undisputed evidence excess speed was not a proximate cause. The findings conflict and are mutually destructive.

 This conclusion alone also invalidates as support for the judgment the finding relating to failure of the bus driver to apply the brakes. A judgment cannot be supported by contradictory findings upon material issues. Such findings are also in conflict with the findings relating to discovered peril. Under the uncontroverted evidence if the only reason for applying brakes was the discovered peril, the finding that such a discovery was not made in time to avoid the collision is in conflict with the findings that negligent failure to apply the brakes was a proximate cause of the collision. The case is very similar to Dallas Ry. & T. Co. v. Redman, Tex. Civ.App., 88 S.W.2d 136, and the reasons

supporting the disposition of that case seem to be equally applicable to this one.

We are not impressed with Railway's contentions regarding the submission, or failure to submit issues relating to contributory negligence. For the purpose of another trial we deem it sufficient to suggest that unless Walsh, as some of the evidence seems to suggest, but as to which no point is made, was engaged with the driver of the ambulance in a common or joint enterprise, the principles governing which are discussed in 42 C.J. p. 1179, § 957, and 45 C.J. p. 1031, § 588, then the controlling principles are to be found discussed in our opinion in International-Great N. Ry. Co. v. Lucas, Tex.Civ.App., 123 S.W.2d 760.

Having concluded that the judgment of the court below must be reversed and the cause remanded, it is accordingly so ordered.