145 P.2d 995

NEW MEXICO GLYCERIN CO. v. GALLEGOS, Commissioner of Revenue.

No. 4781.

Supreme Court of New Mexico.

Feb. 12, 1944.

66

Atwood & Malone, of Roswell, for appellant.

Edward P. Chase, Atty. Gen., and Harry L. Bigbee and William R. Federici, Asst. Attys. Gen., for appellee.

BRICE, Justice.

The question is whether the appellant, a domestic corporation, is liable to the payment of a state tax on its income derived from the operation of its business transacted in another state.

This action was brought under Sec. 76-1240, N.M.Sts.1941, to review a decision of the Commissioner of Revenue on an application of the appellant for revision of the amount of income tax charged to it for the years of 1937, 1938, 1939 and 1940, in which proceeding the Commissioner of Revenue had determined that the appellant for such years was indebted to the state of New Mexico for a balance of income tax of $1,562.87.

Appellant's complaint charges that this amount of tax was arrived at by including as income taxable to appellant by the state of New Mexico all of the net income re-

ceived by appellant from its business of shooting oil wells, transacted in the state of Texas. It prays for judgment cancelling and setting aside the order of the Commissioner charging that appellant owed to the State the amount of tax stated.

The facts are admitted by the appellee, and a construction of the following New Mexico statute 1941 will determine the controversy.

"Sec. 76-1201. There is hereby assessed and levied a tax for the use of the state common school fund or to the state school equalization fund when and if created by law, and state government, at the rates herein specified, upon the net income for the calendar year one thousand nine hundred and thirty-three, in excess of exemptions and credits herein set out, and said tax is hereby assessed and levied for each and every year thereafter and shall in like manner be calculated upon the net income for each calendar year or fiscal year subsequent to the year 1933, and in like manner collected in each subsequent year; * * * * *

"(a) Of every resident individual, trust or estate of the state.

"(b) Of every domestic corporation or association.

"(c) Of every foreign corporation or association and of every non-resident individual, trust or estate, having a business or agency or engaged in the transaction of business in, into or from this state, or deriving any income from any property within this state, in proportion to the net income of such business or agency as hereinafter provided."

"Sec. 76-1221. In the case of a nonresident individual transacting business both within and without this state the tax imposed shall be upon the portion of such entire net income for each taxable year as is derived from sale, wherever made, of products, goods, wares and merchandise, manufactured, or which originated, in this state, and from other business done or property located within this state, which may be determined by an allocation and separate accounting when books of such individual show income derived from business done and property located within this state; otherwise the tax imposed by this chapter shall be on such proportion of the entire net income of such individual as the value of the real estate and other physical assets in this state on the date of the close of the taxable year bears to the total value of all real estate and other physical property used by such individual in the conduct or transaction of his business both within and without this state on the date of the close of the taxable year * * *."

"Sec. 76-1229. Every domestic corporation and every foreign corporation doing business in this state shall pay a tax for each taxable year upon its entire net income derived from business done or property located in this state, except (certain corporations not involved here) * * *"

"Sec. 76-1231. (a) If the entire business of a corporation be transacted within this

state, the tax imposed shall be upon the entire net income of such corporation for the taxable year.

\* \* \* \* \*

"(b) If the business of such corporation be transacted both within and without this state the tax imposed shall be upon the portion of such entire net income for each taxable year as is derived from sales, wherever made, or (of) products, goods, wares and merchandise, manufactured or which originated in this state, and from other business done or property located within this state, which may be determined by an allocation and separate accounting when the books of the corporation show income derived from business done and property located within this state.

"(c) \* \* \*".

There is involved here the question whether subsection (b) of Sec. 76-1201, supra, is limited and controlled by Secs. 76-1229 and 76-1231 and we hold that it is, as hereinafter to be explained.

These statutes are part of the same act, and must be read together if necessary to determine the legislative intent. Sec. 76-1229, supra, is an amendment of the original section. The words "and every foreign corporation" were inserted by amendment. Originally it read "every domestic corporation doing business," etc.

If the word "domestic" had originally been omitted from Sec. 76-1229, then it might with some reason have been held that the reference was to foreign corporations, as then it would conform to subsection (c) of Sec. 76-1201, supra. The Legislature, however, not only used the words "every domestic corporation" in the original statute but it emphasized the fact that it intended this limitation upon the tax by inserting by amendment after the words "every domestic corporation" the words "and every foreign corporation," showing a deliberate intent on the part of the Legislature to place domestic and foreign corporations in the same category regarding intrastate business.

But no such construction can be placed upon Sec. 76-1231, the heading of which is "Corporations Doing Business Partly within and Partly without the State." This could apply only to domestic corporations because the State has no power to impose a tax on the income of a foreign corporation derived from business transacted outside the state, even though the goods, wares and merchandise from which such income is earned are obtained from within the state. Newport Co. v. Tax Commission, 219 Wis. 293, 261 N.W. 884, 100 A.L.R. 1204 and annotation at page 1216; Hans Rees' Sons v. State of North Carolina, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879 and annotation; People ex rel. Stafford v. Travis, 231 N.Y. 339, 132 N.E. 109, 15 A.L.R. 1319.

The word "or" in subsection (b) of Sec. 76-1231, which reads "or products, goods, wares and merchandise, etc.," is patently a typographical error and should read "of," otherwise the whole section which

provides the manner of allocating or apportioning the income derived from business within and without the state would be meaningless. This will conform to the exact language of Sec. 76-1221 regarding nonresident individuals transacting business both within and without the state. Whether such section can constitutionally apply to income derived from "products, goods, wares and merchandise manufactured, or which originated in this state," but sold without the state by a nonresident, is not before us, but see Jackling v. State Tax Comm., 40 N.M. 241, 58 P.2d 1167.

█ It is suggested that there would be an unwarranted discrimination between the taxation of incomes of individuals and those of domestic corporations, should we hold as indicated. That is not at all unusual. The Federal Government does not levy income taxes upon corporations with a view of equality with individuals. The exact question was decided in Lawrence v. State Tax Comm. of Mississippi, 286 U. S. 276, 52 S.Ct. 556, 76 L.Ed. 1102, 87 A. L.R. 374, wherein it was held that a state income tax law does not deny to a citizen the equal protection of the laws, in including income earned from sources without the state in determining his taxable income while excluding it in determining the taxable income of domestic corporations. That is the exact situation here.

Domestic corporations are required to pay income tax on (1) sales wherever made of products, goods, wares and merchandise manufactured, or which originated in this state, and (2) from all other business done or property located within the state.

Finding of fact No. 2 is as follows: "The business transacted by plaintiff in the State of New Mexico was the manufacture of explosives and the use of such explosives in the shooting of oil wells to increase their productivity. The business transacted in Texas consisted of the shooting of wells with explosives, some of which were manufactured by plaintiff in New Mexico, the remainder being purchased in Texas from other manufacturers."

The appellant made no sales of explosives in Texas. Its income was derived from "shooting" wells, not sales.

The statute provides for tax on income from sales of "products, goods, wares and merchandise" manufactured or which originated in this state. It does not mean that one cannot buy a hammer and saw in New Mexico and go into another state and build a house without paying an income tax on the profit made on such building, nor does it mean that one cannot buy an explosive in this state, remove it to Texas and there shoot a well with it, without becoming liable to an income tax on the profit derived from shooting the well.

The appellant was not liable to the tax. The cause should be reversed with instructions to the district court to set aside its judgment and enter judgment for appellant.

It is so ordered.

SADLER, C. J., and MABRY and THREET, JJ., concur.

BICKLEY, Justice (specially concurring).

It is my belief that the Legislature plainly intended by Secs. 76-1220 and 76-1221 that the entire net income of natural persons resident of this state shall be taxed regardless of where their income is produced, less the deductions and exemptions provided by the Act, and that the net income of natural persons non-resident of this state is to be taxed upon their net income insofar as and to the extent that such income is derived from property owned or business, trade, profession or occupation carried on in this state, and on net income derived also from sales wherever made, of products, goods, wares and merchandise, manufactured or which originated in this state.

It is my belief also that it was the intent to tax the net income of domestic corporations in the same manner and by the same standard as the net income of natural persons resident of this state, and to tax the net income of foreign corporations in the same manner and computed by the same formula as the net income of natural persons non-resident of this state. I think it would be reasonable to interpret the provisions of Sec. 76-1201 as imposing the income tax upon the entire net income of domestic corporations wherever produced, and that when the Legislature came to write Sec. 76-1229 they had in mind primarily foreign corporations when they defined the "entire net income" of such corporations to be that net income derived from business done or property located in this state. That they included domestic corporations in this section is true, but this was an unnecessary inclusion since Sec. 76-1201 had already imposed a tax levy upon the net income of domestic corporations without reservations.

Not so in 76-1201 as to foreign corporations because in subparagraph (c) of that section dealing with the net income of foreign corporations they employed language indicating an intent to limit net income of foreign corporations to net income derived from "transaction of business in, into or from this state" or from "any property within this state * * * as hereinafter provided," which would accommodate itself to the provisions of Sec. 76-1229, 76-1230 and 76-1231 and thus bring foreign corporations and non-resident natural persons into the same category for the purpose of income taxation.

Scrutinizing 76-1201 we find no such qualifying phrase "as hereinafter provided" attached to the mandate as to domestic corporations.

The result is that in view of 76-1201 we find the Legislature in Secs. 76-1229 and 76-1231 supplying the amplifying provisions promised in 76-1201 as to foreign corporations and also bungling into including domestic corporations within the operation of such provisions.

As to foreign corporations the limitations upon where and how the income was produced may have been prompted by considerations of constitutionality of the enactment.

As to domestic corporations and resident natural persons, the taxing power seems to be more far reaching without hazard of offending the Constitution.

Therefore, by including domestic corporations in 76-1229 and 76-1231 the Legislature perhaps did a useless thing. But also it was inert, since, if by Sec. 76-1201 they had already, as to domestic corporations, levied a tax upon net income of such corporations without qualification or limitation, and without any qualifying phrase such as is contained in subparagraph (c) pertaining to foreign corporations. Having in 76-1201 levied a tax on the entire net income of domestic corporations, the repetition in 76-1229 and 76-1231 of a levy of a tax upon the same portion of the entire net income as is levied upon the income of foreign corporations does not diminish the levy made on domestic corporations in Sec. 76-1201.

In other words, a tax having been levied upon the entire net income of domestic corporations in Sec. 76-1201, nothing was taken away by again levying a tax upon a part of such net income.

It is an interesting bit of legislative history that Sec. 29 of Senate Bill No. 137 which became Ch. 85 of Laws 1933 contained the language "Every domestic corporation organized. under the laws of this state and every foreign corporation doing business in this State shall pay a tax for each taxable year upon its entire net income derived from business done or property located in this State," etc.

For some reason the words "organized under the laws of this state and every foreign corporation" do not appear in the enrolled and engrossed bill. It may have been the idea of a cautious draftsman of the Act to show in Secs. 76-1229 and 76-1231 that foreign corporations were not submitted to any greater burdens than domestic corporations, and that in fact looking further to 76-1201 it would be found that domestic corporations have another additional burden.

The view I entertain (though perhaps not my argument) has the support of the rule of statutory construction that statutes imposing taxes ought to be construed with fairness, if not liberality, in order to carry out the intention of the Legislature and further the important public interests which such statutes subserve. Southern Pac. R. Co. v. State, 34 N.M. 479, 284 P. 117. This view also has the support of the tax department construction and of the office of the Attorney General and of the trial court.

In view, however, that all of my associates have arrived at a different conclusion, I may be wrong in my interpretation. I therefore yield to the judgment of my as-

sociates and the foregoing is written for such value as it may have to the taxing authorities to the end that if it seems desirable, this vague statute may be amended.