327 S.E.2d 458

**Ruth Ellen McCLANAHAN and William G. McClanahan**

v.

**PUTNAM COUNTY COMMISSION and James Keith Harrison.**

**No. 16133.**

Supreme Court of Appeals of West Virginia.

March 1, 1985.

Calwell, McCormick & Peyton, Harvey D. Peyton, Nitro, for appellants.

Goodwin & Pettry, Andrew J. Goodwin, Charleston, for appellees.

MILLER, Justice:

The plaintiffs, Ruth Ellen McClanahan and William G. McClanahan, appeal from a final order of the Putnam County Circuit Court overruling their motion to set aside the verdict and award them a new trial. The jury found that the McClanahans were 51 percent negligent in a vehicular accident involving their car and an ambulance. Under our comparative negligence rule, this finding prevented any recovery by the McClanahans. *See* Syllabus Point 1, *Everly v. Columbia Gas of West Virginia, Inc.*, 171 W.Va. 534, 301 S.E.2d 165 (1982); Syllabus Point 1, *Adkins v. Whitten*, 171 W.Va. 106, 297 S.E.2d 881 (1982); *Star Furniture Co. v. Pulaski Furniture Co.*, 171 W.Va. 79, 297 S.E.2d 854, 861 (1982); Syllabus Point 3, *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979).[1]

The accident occurred in the town of Bancroft on Route 62 in a no-passing zone on a two-lane highway. Mrs. McClanahan was in the northbound lane preparing to execute a left turn when she noticed an

---

**1.** Syllabus Point 3 of *Bradley* states: "A party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident."

ambulance behind her flashing its lights and sounding its siren. Judging the ambulance to be a considerable distance behind her, she proceeded to make her turn. Meanwhile, the ambulance had moved into the southbound lane to pass her car. The two vehicles collided in the southbound lane, with the ambulance striking the McClanahan vehicle broadside.

The plaintiffs argue that the trial court erred in refusing to fully and fairly instruct the jury upon their theories of the case by refusing to give their Instructions 2 and 2A as offered. These instructions would have allowed the jury to return a verdict in favor of the plaintiffs upon finding that the ambulance had been operated left of the center line within one hundred feet of an intersection, or that its driver had "attempted to pass the car driven by Ruth Ellen McClanahan at a point on Route 62 where a no-passing zone was marked and clearly visible to an ordinarily observant person."[2]

The circuit court took the view that our emergency vehicle statute, W.Va.Code, 17C–2–5, permitted the driver of the defendant's ambulance to disregard traffic regulations governing passing provided that he exercised due care in doing so. Conse-

quently, it refused to give Instruction 2, and would not give Instruction 2A until it had been modified by the addition of due care language.

The plaintiffs' chief argument is that our emergency vehicle statute, W.Va.Code, 17C–2–5, does not provide a specific exception for an authorized emergency vehicle to cross left of center in a no-passing zone or within one hundred feet of an intersection. W.Va.Code, 17C–2–5, allows authorized emergency vehicles to disregard certain traffic regulations provided that they are responding to an emergency call, that they use their warning lights and sirens, and that they drive "with due regard for the safety of all persons."[3] W.Va.Code, 17C–2–5(a), (c), and (d); *Davis v. Cross*, 152 W.Va. 540, 164 S.E.2d 899 (1968); *Muldoon v. Kepner*, 141 W.Va. 577, 91 S.E.2d 727 (1956).

The plaintiffs cite *Muldoon* in support of their position. It involved a rather similar factual situation with the ambulance colliding left of center of the road with an automobile. We found however that the ambulance was not entitled to the benefit of W.Va.Code, 17C–2–5, because it had not been designated as an authorized emergency vehicle.[4] We also concluded that the

2. The instructions were patterned on the requirements of our traffic regulations. W.Va. Code, 17C–7–6(a)(2), prohibits driving left of center when approaching within one hundred feet of an intersection. W.Va.Code, 17C–7–7, forbids passing in a no-passing zone.

3. W.Va.Code, 17C–2–5, provides:
"(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.
"(b) The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this chapter;
(2) Proceed past a red or stop sign, but only after slowing down as may be necessary for safe operation;
(3) Exceed the speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing direction of movement of turning in specified directions.

"(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when the driver of any said vehicle while in motion sounds audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted flashing lamp as authorized by section twenty-six [§ 17C–15–26], article fifteen of this chapter which is visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a warning light visible from in front of the vehicle.
"(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

4. We quoted W.Va.Code, 17C–1–6, in *Muldoon* as to the definition of an authorized emergency vehicle:
"'Authorized emergency vehicle' means vehicles of the fire department, duly chartered

ambulance was not responding to an actual emergency at the time of the accident.[5] In *Davis,* we dealt with the emergency vehicle statute in an intersection collision between a fire truck and a motorcycle. We recognized that this statute permitted an authorized emergency vehicle to "proceed past a red or stop signal or stop sign but only after slowing down as may be necessary for safe operations." W.Va.Code, 17C-2-5(b)(2).

■ It is generally held that authorized emergency vehicles must obey traffic regulations except for any exemptions granted under emergency vehicle statutes. *See, e.g., City of Cedar Rapids v. Moses,* 223 N.W.2d 263 (Iowa 1974); *Waller v. King,* 188 So.2d 231 (La.Ct.App.1966); *Roll Osborn & Sons, Inc. v. Howatt,* 167 So. 466 (La.Ct.App.1936); *Anderson v. Finzel,* 204 Or. 162, 282 P.2d 358 (1955); *Buck v. Ice Delivery Co.,* 146 Or. 132, 29 P.2d 523 (1934); *Dallas Railway & Terminal Co. v. Walsh,* 156 S.W.2d 320 (Tex.Civ.App.1941), *aff'd,* 140 Tex. 385, 167 S.W.2d 1018 (1943); *Lamar & Smith v. Stroud,* 5 S.W.2d 824 (Tex.Civ.App.1928); *National Funeral Home v. Dalehite,* 15 Tenn.App. 482 (1932); *White v. Doe,* 207 Va. 276, 148 S.E.2d 797 (1966); *Virginia Transit Co. v. Tidd,* 194 Va. 418, 73 S.E.2d 405 (1952); 60 C.J.S. *Motor Vehicles* § 376 at 711 (1969). The basis for this rule ordinarily rests on provisions in various motor vehicle statutes similar to W.Va.Code, 17C-2-4(a). This statute mandates that the provisions of our motor vehicle code are applicable to all persons except for specific exceptions with reference to authorized emergency vehicles.[6]

The trial court apparently relied upon the exception contained in subsection (b)(4), which allows drivers of emergency vehicles to "[d]isregard regulations governing direction of movement of turning in specified directions." The wording of this provision is awkward and seemingly redundant, with the references to direction "of movement" and "of turning." Our research convinces us that this confusion in language results from a clerical error in copying the language of the Uniform Vehicle Code, which was used in part as the basis for Chapter 17C of our Code. Section 11-106(b)(4) (1968) of the uniform act reads as follows: "Disregard regulations governing direction of movement *or* turning in specified directions." (Emphasis supplied).[7] Apparently, at some point in the drafting of our Code provision, someone inadvertently turned an "r" into an "f," thus changing the "or" in the uniform act into a second "of." This is an easy mistake to make, given the close proximity of the "r" and "f" keys on a typewriter keyboard.

■ In the past, we have recognized that where it is apparent that a clerical error has been made in the drafting of legislation which renders its meaning obscure, we will correct such clerical error. We stated in Syllabus Point 1 of *Anderson v. Town of Friendly,* 86 W.Va. 554, 104 S.E. 48 (1920), that:

"Clerical errors in a statute will be disregarded, or read as corrected, where the true intention of the Legislature is

rescue squad, police vehicles, and such ambulances and emergency vehicles of municipal departments or public service corporations as are designated or authorized by the commissioner or the chief of police of an incorporated city, and such privately owned ambulances and emergency vehicles as are designated by the commissioner."

5. W.Va.Code, 17C-2-5(a), defines the conditions under which an authorized emergency vehicle can claim an emergency status, and Subsection (c) states that in order to claim an exemption from the specified traffic regulations, it must sound audible signals and flashing lights as therein set out. *See* note 3, *supra,* for the full text of W.Va.Code, 17C-2-5.

6. W.Va.Code, 17C-2-4(a), provides:

"The provisions of this chapter applicable to the drivers of vehicles upon the highways shall apply to the drivers of all vehicles owned or operated by the United States, this State, or any county, city, town, district, or any other political subdivision of the State, except as provided in this section and subject to such specific exceptions as are set forth in this chapter with reference to authorized emergency vehicles."

7. Except for using an "of" instead of an "or," the wording of W.Va.Code, 17C-2-5, is identical to that of Section 11-106 of the Uniform Vehicle Code.

manifest from the language used and the purpose sought to be attained."

*See also Sterling Nat'l Bank & Trust Co. of New York v. Charleston Transit Co.,* 126 W.Va. 42, 27 S.E.2d 256 (1943), *cert. denied,* 321 U.S. 777, 88 L.Ed. 1071, 64 S.Ct. 619 (1944); *State v. Cross,* 44 W.Va. 315, 29 S.E. 527 (1897); N. Singer, Sutherland on Statutory Construction § 47.36 (Rev. 4th ed. 1984); 82 C.J.S. *Statutes* § 342 (1953).

In *Anderson,* we were confronted with statutory language concerning municipalities that were "heretofore incorporated under the provision of said chapter forty-seven of said acts of one thousand nine hundred and one." We found that Chapter 47 of the Acts of 1901 had nothing to do with the incorporation of municipalities. We observed that Chapter 47 of the then existing Code did deal with incorporation of municipalities and that this chapter had been amended by the Acts of 1901. We, therefore, held that the word "of" in the above quoted statutory language should be read as "or." Other courts have also found it necessary to substitute "of" for "or," or the reverse, in order to make sense out of statutory language. *See Jones v. Iowa State Highway Comm'n,* 207 N.W.2d 1 (Iowa 1973); *Pomeroy v. State Bd. of Equalization of Montana,* 99 Mont. 534, 45 P.2d 316 (1935); *New Mexico Glycerin Co. v. Gallegos,* 48 N.M. 65, 145 P.2d 995 (1944); *Kitchen v. Southern Ry.,* 68 S.C. 554, 48 S.E. 4 (1904); 73 Am.Jur.2d *Statutes* § 243 (1974).

■ We will read W.Va.Code, 17C–2–5(b)(4), as it was obviously meant to be read, by substituting the word "or" for "of" so that it now states "[d]isregard regulations governing direction of movement *or* turning in specified directions." With this correction, it is apparent that this subsection refers to two different kinds of traffic regulations, those governing "di-rection of movement" and those governing "turning in specified directions."

Although the statutory term "direction of movement" is not defined, in the cases where this particular point has arisen, the courts have applied it to cover situations where the emergency vehicle is traveling outside the righthand lane and is passing other vehicles. In *Stanton v. State,* 29 A.D.2d 612, 285 N.Y.S.2d 964 (1967), *aff'd mem.,* 26 N.Y.2d 990, 259 N.E.2d 494, 311 N.Y.S.2d 28 (1970), the court interpreted an identical provision of the New York statute enabling an authorized emergency vehicle to "[d]isregard regulations governing directions of movement or turning in specified directions." In *Stanton,* a police officer was pursuing a vehicle that was traveling in the wrong direction on a four-lane highway and this pursuit caused the death of a third party. The court rejected the contention that the officer should have pursued the violator in the opposite lane, stating that this argument "fails in the face of this statutory authority to disregard directions of movement." 29 A.D.2d at 613, 285 N.Y.S.2d at 967.

Similarly, in *Robinson v. Gerber,* 454 S.W.2d 933 (Mo.Ct.App.1970), the court had before it a provision stating that an "emergency vehicle, while so operating, may disregard regulations governing directions of movement." 454 S.W.2d at 937. The court concluded that this provision applied to an ambulance traveling on the wrong side of the road.

■ We believe that the term "direction of movement," contained in the emergency vehicle statute, W.Va.Code, 17C–2–5(b)(4), relates to those traffic rules which speak to the manner of movement of a vehicle under various circumstances upon a public highway. These rules are contained in W.Va. Code, 17C–7–1 through –13, and the headings of the various sections illustrate their general subject matter.[8]

---

**8.** The following are the headings found under Chapter 17C, Article 7:

Section 1: Driving on right side of roadway; exceptions.

Section 2: Passing vehicles proceeding in opposite directions.

Section 3: Overtaking and passing vehicle proceeding in same direction—Passing on the left generally.

Section 4: Same—When overtaking on the right is permitted.

Encompassed within these provisions are the rules relating to and limiting the passing on the left, W.Va.Code, 17C–7–5 and –6, and the no-passing zone statute, W.Va. Code, 17C–7–7. These statutes govern the direction of movement of vehicles on the highway and restrict the right of a driver to move out of the righthand lane of travel in order to pass another vehicle. It was these statutes that were allegedly violated in this case.

■ We wish to emphasize that the "direction of movement" exception in the authorized emergency vehicle statute constitutes a limited exception. We use the term "limited exception" because it is clear from W.Va.Code, 17C–2–5(d), that an authorized emergency vehicle cannot even violate the exempted traffic rules with complete immunity because of this language: "The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

In *Vaughn v. Oates*, 128 W.Va. 554, 37 S.E.2d 479 (1946), we held that a city ordinance giving authorized emergency vehicles the right of way at an intersection, "does not relieve the operator of such vehicle from the duty to operate the same with reasonable care." Syllabus Point 1, in part. In *Muldoon*, we referred to W.Va. Code, 17C–5–2(d), and stated that it "provides expressly that the driver of an authorized emergency vehicle shall not be relieved from the duty to drive with due regard for the safety of all persons." 141 W.Va. at 583, 91 S.E.2d at 730–31. Thus, by virtue of W.Va.Code, 17C–2–5(d), the driver of an authorized emergency vehicle is not relieved of the duty to drive with due regard for the safety of all persons.

Most courts that have similar due regard provisions in their authorized emergency vehicle statutes hold that an emergency vehicle driver is not relieved from exercising reasonable care under the circumstances. What is meant is that the driver of an authorized emergency vehicle cannot be charged with violating a motor vehicle statute for which the emergency vehicle statute provides an exemption. Such driver, however, can be charged with failure to exercise due care in the operation of his vehicle under all of the circumstances then existing. *Freeman v. Reeves*, 241 Ark. 867, 410 S.W.2d 740 (1967); *Barnes v. Toppin*, 482 A.2d 749 (Del.1984); *District of Columbia v. Lapiana*, 194 A.2d 303 (D.C. 1963); *Bynes v. Stafford*, 106 Ga.App. 406, 127 S.E.2d 159 (1962); *Bailey v. L.W. Edison Charitable Foundation of Grand Rapids, Inc.*, 152 Ind.App. 460, 284 N.E.2d 141 (1971); *Shawnee Tp. Fire Dist. No. 1 v. Morgan*, 221 Kan. 271, 559 P.2d 1141 (1977); *Calvert Fire Insur. Co. v. Hall Funeral Home*, 68 So.2d 626 (La.Ct.App. 1962); *McKay v. Hargis*, 351 Mich. 409, 88 N.W.2d 456 (1958); *Robinson v. Gerber*, 454 S.W.2d 933 (Mo.Ct.App.1970); *Stenberg v. Neel*, 613 P.2d 1007 (Mont.1980); *Stanton v. State, supra; Brown v. Spokane County Fire Protection Dist. No. 1*, 100 Wash.2d 188, 668 P.2d 571 (1983) (en banc); Annot., 84 A.L.R.2d 121, 135 (1962).

■ This was the position taken by the lower court in the instructional phase of the case. The plaintiffs urged that they were entitled to have the jury instructed that if the defendant's emergency vehicle had violated certain statutes relating to traveling in the lefthand lane that this constituted negligence. The court properly concluded that the defendant driver was exempt from these statutes by virtue of the "direction of movement" provision in

Section 5: Same—Limitations on overtaking on the left.
Section 6: Same—Further limitations on driving to left of center on roadway.
Section 7: Same—No-passing zones.
Section 8: One-way roadways and rotary traffic islands.
Section 9: Driving on roadways laned for traffic.

Section 10: Following too closely.
Section 11: Driving on divided highways.
Section 12: Controlled-access roadway—Driving onto or from.
Section 13: Same—Restrictions on use by non-motorized traffic, cycles, etc.

W.Va.Code, 17C–2–5, but that the driver was still required to exercise reasonable care under all the circumstances, and so instructed the jury.

Finding no error in the circuit court's ruling, we therefore affirm its judgment.

Affirmed.