364 S.E.2d 805

**ST. MARY'S HOSPITAL**

v.

**STATE HEALTH PLANNING AND DEVELOPMENT AGENCY, Tax Commissioner, Appellees, and HCA Health Services of West Virginia Inc., Intervenor.**

No. 17484.

Supreme Court of Appeals of West Virginia.

Dec. 15, 1987.

Sam R. Harshbarger, Milton, Seymour J. Schafer, Pittsburgh, Pa., for St. Mary's Hosp.

J. Bradley Russell, Asst. Atty. Gen., for SHP Agency & Rose.

Michael I. Spiker, Charleston, for intervenors.

McGRAW, Chief Justice:

This is an appeal by St. Mary's Hospital from the judgement of the Circuit Court of Kanawha County affirming the grant of a certificate of need to the intervenor-appellee, HCA Health Services of West Virginia,

Inc. The circuit court's decision followed a long and involved set of administrative rulings which resulted in the award of a certificate of need to Appellee HCA to construct and operate a freestanding sixty bed psychiatric hospital in Huntington, West Virginia. The appellant makes four assignments of error and seeks reversal of the decisions below. Because we agree that the findings of fact were inadequate to meet the statutory requirements, we reverse and remand this case to the West Virginia Health Care Cost Review Authority with directions to conduct hearings in compliance with the statutory requirements.

## I.

The certification of need in West Virginia began in 1977 with the passage of state legislation complementary to a national trend to deal with spiraling health care costs through reviewing the appropriateness of proposed major capital expenditures by health care institutions. *Princeton Community Hospital v. State Health Planning and Development Agency*, 174 W.Va. 558, 561–62, 328 S.E.2d 164, 167–68 (1985). When Appellee HCA applied for a certificate of need for its proposed facility in 1982, the Appellee State Health Planning and Development Agency (SHPDA) was the state agency empowered by statute to administer the program. W.Va.Code § 16–2D–1 *et seq.* (1985 Replacement Vol.).[1] The application explained that the proposed hospital would be divided into three twenty bed units providing services for substance abusers, adult psychiatric patients, and child and adolescent psychiatric patients. The hospital, which would cost over six million dollars to build, would employ approximately sixty-five persons.

In September 1982, the SHPDA determined that the application was complete, and a public hearing was held December 8–10, 1982. The first SHPDA decision granting the certificate of need was issued in

January 1983. After a review and remand by the West Virginia Tax Department,[2] the SHPDA issued a remand decision granting the certificate of need on September 19, 1983. It is this administrative decision which is the primary matter under review today. The Tax Department affirmed the SHPDA's second ruling and the appellant sought review of the administrative decisions in circuit court in March 1984, pursuant to Code § 16–2D–10(f). In April 1986, the circuit court issued its opinion affirming the decisions of the Tax Department and the SHPDA.

In reviewing the SHPDA's decision, both the Tax Department, as the statutorily designated review agency, and the circuit court were required by the statute, Code § 16–2D–10(f), to conduct their reviews in accordance with Code § 29A–5–4, which is the Administrative Procedures Act provision which governs the review of contested cases. *Princeton Hospital*, 174 W.Va. at 562, 328 S.E.2d at 168. Regarding the parameters of this review, we have said:

Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or

1. In 1987, responsibility for administering the certificate of need program was transferred to the Health Care Cost Review Authority. W.Va. Code § 16–2D–2(bb) (Supp.1987).

2. The Tax Department has been designated by the Governor as the certificate of need review agency pursuant to Code § 16–2D–10(a).

clearly unwarranted exercise of discretion."

Syl. Pt. 2, *Shepherdstown Volunteer Fire Department v. Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983). Thus, the key question is whether the circuit court and the Tax Department were correct, based on the foregoing standards, in affirming the Appellee SHPDA's determinations and granting a certificate of need.

## II.

■ Chapter 16, Article 2D of the Code details a complex process and specific standards by which applications for certificates are to be reviewed by the state agency. Before a certificate of need may be issued to any entity other than a health maintenance organization, the state agency must find that the proposed new institutional health service is both needed and, except in emergency circumstances, consistent with the state health plan. In addition, the state agency must make written findings regarding the (1) existence of alternatives, (2) utilization of similar existing services, (3) consideration of alternatives to new construction, (4) serious problems of patients in obtaining services without the proposed service, (5) consistency with applicable long-term care plans, and (6) needs of the medically underserved population. W.Va.Code § 16–2D–6(e), –9; *see* W.Va. C.S.R. § 65–7–10 (1983). Finally, because the conduct of a certificate of need hearing must be in accordance with the requirements of West Virginia Code § 29A–5–1 *et seq.*, the state agency must rule on all proposed findings [3] and must accompany any findings set forth in statutory language with "a concise and explicit statement of the underlying facts supporting the findings." W.Va.Code § 29A–5–3 (1986 Replacement Vol.); *see Harrison v. Ginsberg*, 169 W.Va. 162, 170, 286 S.E.2d 276, 281 (1982). The Appellee SHPDA's remand decision falls short of these statutory standards in several ways.

■ The remand opinion makes no attempt to rule on the parties' proposed findings. The requirement of West Virginia Code § 29A–5–3 that an administrative agency rule on the parties' proposed findings is mandatory and will be enforced by the courts. Although the agency does not need to extensively discuss each proposed finding, such rulings must be sufficiently clear to assure a reviewing court that all those findings have been considered and dealt with, not overlooked or concealed. *Pelham v. Superintendent*, 436 So.2d 951 (Fla.Dist.Ct.App.1983); *Schomer v. Department of Professional Regulation*, 417 So.2d 1089 (Fla.Dist.Ct.App.1982); *Outdoor Circle v. Harold K. L. Castle Trust Estate*, 4 Haw.App. 633, 675 P.2d 784 (1983).

■ The Administrative Procedures Act also requires a concise and explicit explanation of the facts underlying an agency's findings that the substantive statute has or has not been complied with. A simple recitation of findings of fact in bare statutory language will not suffice. *Citizens Bank*

---

3. The certificate of need statute in effect during the review of this proposal said that the public hearing required as part of the review process should be conducted in compliance with Code § 29A–3–5, which covers notice requirements for proposed administrative rule making. We agree with the circuit court that the citation of § 29A–3–5 was a clerical error, and that such an error should be corrected by the courts, where the true intention is manifest. Syl. Pt. 2, *McClanahan v. Putnam County Commission*, 174 W.Va. 478, 327 S.E.2d 458 (1985). Counsel for the Appellee SHPDA puts forth a rather caustic argument that § 29A–3–5 properly applies and that, therefore, the state agency is not required to rule on the parties' proposed findings. Counsel then professes to be somewhat surprised that the appellant still contends that such rulings must be made. Counsel's surprise should be diminished by a reading of the circuit court's opinion, which rejected this same argument by Counsel. To accept Counsel's argument would require this Court to ignore that the certificate of need process is not a rule making, but is a procedure for contested cases. (It should also be noted that Counsel does not affirmatively assert that the rule-making procedural requirements were met by the state agency.) All of the other provisions in the certificate of need statute refer to the procedure for contested cases. The true legislative intent was manifested when the next revision of the certificate of need procedure corrected the erroneous citation of § 29A–3–5. The state agency must comply with the requirements of Code § 29A–5–3 in deciding whether to issue a certificate.

*of Weirton v. West Virginia Board of Banking and Financial Institutions,* 160 W.Va. 220, 231, 233 S.E.2d 719, 727 (1977). In this case, the circuit court ruled that the twelve page portion of the state agency decision labelled "Evaluation of Evidence" substantially complies with the guidelines of *Citizens Bank* and Code § 29A–5–3. We disagree.

■ Having reviewed the statute, we find the evaluation of evidence section of the state agency's remand decision to be inadequate because several of the findings required by Code § 16–2D–9 are made in conclusory fashion or ignored completely. The Appellee SHPDA's remand decision to grant a certificate of need is, therefore, both in violation of the requirements of the certificate of need statute and in excess of its statutory authority, Code § 29A–5–4(g)(1)–(2), and the decisions below must be reversed.

### III.

The evaluation of evidence section of the state agency's remand decision begins by finding Appellee HCA's project reviewable under Code § 16–2D–3, and next goes on to examine the proposal's consistency with the 1982 State Health Plan.[4] A crucial objective of the Plan requires that the number of acute care beds in a designated area be within the range of potential need, taking certain specified factors into consideration. The recommended action step[5] following this objective says that a proposal may be found consistent with the Plan if the new beds do not result in a bed supply above the lower limit of the acceptable range, or if the resultant supply is within the acceptable range and the increase is justifiable because of any of four specified exceptions. Objectives DT 4–1.5, Recommended Action 7.

While the instant proposal called for the construction of sixty beds, the state agency in its evaluation of evidence, makes the cryptic statement that "The HCA proposal involves the addition of 40 acute care beds. The SHPDA does not count substance abuse beds as acute care beds, which explains the use of forty beds in this calculation rather than the total of 60 as proposed by this applicant."[6] The state agency calculated the study area, existing bed supply, the five-year projected bed supply, and the range of acceptable bed supply in accordance with the methodologies detailed in the acute care chapter of the Plan,[7] under which short-term psychiatric inpatient services are evaluated. The range of acceptable bed supply in the three county area is between 914 and 1,015. With the addition of the 40 HCA acute care beds, the projected bed supply would be 986, within the acceptable range. Following Recommended Action 7, the state agency next examined the three exceptions by which Appellee HCA argued its proposal could be found consistent with the Plan. The first two exceptions were rejected as not applicable to the proposal, but the state agency found that exception (iv)[8] applied because

---

4. Code § 16–2D–9(b) permits issuance of a certificate only if a proposed service is found to be both needed and consistent with the Plan, and it is within the state agency's discretion to address these requirements in whatever order it finds appropriate. *Princeton Hospital,* 174 W.Va. at 563, 328 S.E.2d at 169.

5. Recommended actions in the Plan are requirements insofar as they are used to determine consistency with the Plan for certificate of need purposes. *Princeton Hospital,* at 174 W.Va. at 566 n. 12, 328 S.E.2d at 173 n. 12.

6. This explanation is less than satisfying in light of the Plan's failure to differentiate between substance abuse beds and other short-term psychiatric services, and the similarity of services described by the proposal. Further, we are not told by what standards other than those of the

Plan's acute care chapter the substance abuse beds could be evaluated. The Appellee SHPDA's unexplained removal of those 20 beds from the review process thus appears arbitrary on the basis of the information on the record.

7. Much of the parties' argument is spent attacking or defending the methodology for establishing a study area and bed need utilized by a consulting firm whose report was submitted to the state agency by Appellee HCA. We see no indication in the state agency's remand decision that it relied on the consultant's report for a determination of the bed need or supply.

8. Exception (iv) allows exceeding the lower limit if "[t]he proposal services the attainment of other objectives in the [Plan] *which could not be achieved in the absece [sic] of the proposal"* (emphasis added).

the proposed services would serve the attainment of portions of the behavioral health chapter of the Plan.

There are at least two problems with the state agency's determination of compliance with this portion of the Plan. First, the state agency made no findings nor offered any discussion of the second requirement of exception (iv), that is, that the objectives of the behavioral health chapter of the Plan could not be achieved in the absence of the proposal. Second, the behavioral health chapter of the Plan is, in the words of the Appellee SHPDA's own brief "by no means the clearest and most understandable document ever written and is in fact far from clear." We have reviewed the chapter, and find it difficult to imagine any marginally acceptable modern treatment service or facility which would not be approvable under the chapter. Unlike its acute care counterpart, there are no numerical limits or other measurable standards by which to judge a proposed new service. The few sentences taken from the chapter to justify the exception are taken out of context and would seem to be more appropriately applied to less restrictive services than those which predominate in the HCA proposal. The Appellee SHPDA's findings regarding compliance with the behavioral health chapter of the Plan give this Court little information upon which to base our review.

As a final step in determining if HCA's proposal complied with the Plan, the state agency examined the proposals for inconsistencies with Recommended Action 7(e), which has eight subparts. The state agency found that only subpart (iii) applied.[9] That provision requires a showing of financial feasibility as well as costs and charges that are competitive with comparable hospitals. In looking to financial feasibility, the state agency cited only the initial capital investment. Nothing in the remand decision discusses financial feasibility in operating the facility, which should be a crucial factor. The proposal itself projected a net operating loss for the first two years of operation. Without factual findings by the state agency, this Court cannot determine if the state agency's decision on financial feasibility was supported by substantial evidence or was clearly wrong.[10]

Having determined that the proposal was consistent with the Plan, the remand decision assumes and declares that the proposal is both needed, Code § 16–2D–9(b)(1), and that patients will experience serious problems in obtaining care without it, Code § 16–2D–6(e). We presume that the statutory requirements regarding need and patient problems in obtaining care are not mere surplusage, but that the state agency is required by those provisions to make additional findings on the record.[11] The remand decision is, therefore, also deficient in these areas.

The state agency's discussion of the matter of the existence and practicability of superior alternatives, Code § 16–2D–6(e), also falls short of the "reasoned explanation of the ultimate conclusion reached" which is required by basic principles of administrative law. *Harrison v. Ginsberg*, 169 W.Va. at 170, 286 S.E.2d at 281. The remand decision simply informs us that Appellee HCA considered and rejected three alternatives. It is the state agency's

---

9. We wonder why the state agency did not determine that subpart (vii) regarding alternatives also applied. Since, however, the matter of alternatives is discussed elsewhere, we do not tarry on this matter.

10. In determining the proposal's competitiveness, the state agency accepted Appellee HCA's various arguments that the rates charged by Highland Hospital, the most readily comparable facility, should be dramatically adjusted upward for a meaningful comparison. The rate charged by Highland in 1982 was approximately $126 per day. Appellee HCA's proposed rate for 1984 was $252. The state agency apparently agreed

with Appellee HCA that Highland's rates had to be adjusted first to break even and then by an inflation factor of 25.91% for each of the two intervening years, bringing Highland's adjusted rate to $222, roughly comparable to that of the proposed project. We question if such large inflationary increases are realistic and expect that on remand the state agency will examine this argument more closely.

11. "It is always presumed that the legislature will not enact a meaningless or useless statute," *In re Dostert*, 174 W.Va. 258, 269 n. 20, 324 S.E.2d 402, 413 n. 20 (1984).

· reasoned judgement which is important here, not the applicant's.[12]

The remand decision also addresses the issue of utilization of existing facilities and accessibility to the medically underserved. Code § 16–2D–6(e).[13] The standards and findings in these two areas are sufficient to allow review and are not clearly wrong based on the record. Because, however, the previously detailed weaknesses in the remand decision prejudiced the rights of the appellant, we reverse the prior decisions and remand the case to the Health Care Cost Review Authority.[14]

12.  Blind acceptance of the Appellee HCA's determination on these alternatives seems particularly ill conceived with the benefit of hindsight. While the Appellee HCA rejected the possibility of acquiring an existing acute care hospital in its certificate of need application, Appellee HCA did, in fact, acquire Huntington Hospital immediately after the circuit court decision· in this case.

13.  There are no long-term care plans applicable in this case, as the proposed facility is for acute care and short-term services. Code § 16–2D–6(e).

14.  Because our decision today is based on the statutory requirements, we do not address the constitutional matters raised by the appellant.

The appellant also urges us to rule that the circuit court should have altered its judgement and re-opened the record to take evidence of changed circumstances. Nothing in Code § 29A–5–4(f) provides for re-opening the record. Given that this change of circumstance occurred some four years after the certificate of need application was filed, this case did not cry out for the exercise of any inherent equitable powers of the circuit court. On remand, we would expect that the state agency will begin the process anew, as not only circumstances, but the Plan and the state agency's standards for review have changed since 1982.