434 S.E.2d 15

**Cecil C. VARNEY, Petitioner Below, Appellee,**

v.

**Ken HECHLER, Secretary of State of West Virginia, Respondent Below, Appellant.**

**No. 21493.**

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1993.

Decided July 16, 1993.

---

Cecil C. Varney, pro se.

Marcella Gower, Asst. Atty. Gen., Charleston, for appellant.

WORKMAN, Chief Justice:

This case is before the Court upon the appeal of Secretary of State Ken Hechler, from the May 4, 1992, final order of the Circuit Court of Mingo County which reversed and vacated the Appellant's June 12, 1991, final decision revoking the notary public commission of the Appellee, Cecil C. Varney. The Appellant raises the follow-ing assignments of error: 1) the circuit court erred in finding, as a matter of law, that the Secretary of State was required to submit a responsive pleading; 2) the circuit court erred, as a matter of law, when it found that an inherent conflict of interest existed in the administrative proceedings; 3) the circuit court erred in finding that Mr. Varney's proposed findings of fact were not addressed in the Secretary of State's final decision; 4) the circuit court erred in finding that the alleged failure to send the final decision via certified mail to Mr. Varney was a basis for reversal; and 5) the circuit court erred in finding that matters outside the record were considered in the Appellant's final decision. Upon review of the briefs and arguments of the parties, the record and all other matters submitted before the Court, we find that the circuit court erred in reversing and vacating the June 12, 1991, final decision of the Secretary of State and we reverse the decision of the circuit court.

I.

On August 31, 1990, Angela L. Varney, the Appellee's ex-wife, filed a complaint with the Appellant's office. Mrs. Varney alleged in the complaint that the signature of Mary Lou Varney, the Appellee's mother, on a deed of conveyance dated September 30, 1989, conveying property from the Appellee's mother to the Appellee, was not notarized by Anita Musick, the Appellee's secretary, although her notary stamp and signature appear on the document. Mrs. Varney also alleged that the Appellee signed Ms. Musick's name and used her notary stamp to notarize the deed.

The Appellant undertook an investigation of the complaint and requested in a letter to Ms. Musick, dated November 28, 1990, that she review the deed to determine whether she had notarized it. Ms. Musick responded to the Appellant's inquiry by letter dated December 4, 1990. She stated that she did not notarize the Appellee's mother's signature and that she "assumed that Mr. Varney then did sign my name and use my seal to notarize the signature of Mary Lou Varney...."

Next, the Appellant, by letter dated January 24, 1991, advised the Appellee of the alleged improper notarization on the deed and requested that the Appellee respond to the allegations against him by submitting his version of what had transpired. In a letter dated February 8, 1991, the Appellee declined to respond to the Appellant's inquiry. The Appellee also asserted his Fifth Amendment privilege against self-incrimination. Subsequently, on March 15, 1991, the Appellant informed the Appellee by letter that he was recommending that the Appellee's notary commission be revoked. A hearing on the matter was also scheduled.

On April 12, 1991, a hearing was conducted by Robert Wilkinson, a lawyer and Deputy Secretary of State. Mr. Wilkinson was appointed as the hearing examiner by the Appellant.[1] The Appellant called both the Appellee and Ms. Musick to testify. The Appellee again invoked his Fifth Amendment privilege. Ms. Musick, however, testified that the Appellee acknowledged to her that he had notarized the document using her name and stamp. The Appellee offered no witnesses and did not cross-examine Ms. Musick.[2] On May 17, 1991, the hearing examiner issued a report to the Appellant recommending revocation of the Appellee's notary commission.

Prior to the Appellant issuing a final decision, the Appellee filed a petition for judicial review in the Circuit Court of Mingo County. Accompanying the petition was a motion for stay of the revocation of his notary commission. On June 10, 1991, the Appellant filed a motion to dismiss asserting lack of finality as grounds for dismissal since the Appellant had not yet rendered a final decision from which the Appellee could appeal. The Appellant's final decision ordering the revocation of the Appellee's notary commission was not issued until June 12, 1991. The revocation was effective as of June 24, 1991. The circuit court held by order dated June 14, 1991, that if the final decision was adverse to the Appellee when it was rendered by the Appellant, the action of revocation would be stayed until the Appellee could seek judicial review of that decision.

Next, the Appellee filed a motion with the circuit court to vacate the Appellant's final decision on July 18, 1991. The Appellee based the motion on the Appellant's failure to file the original or certified copy of the entire record of the proceeding under review with the circuit court within fifteen days after the receipt of the petition for judicial review pursuant to West Virginia Code § 29A-5-4(d) (1993). The record was filed by the Appellant with the circuit court on July 17, 1991. The Appellant filed an objection to the Appellee's motion to vacate on July 30, 1991. It was not until May 4, 1992, that the Circuit Court of Mingo County issued an opinion order reversing and vacating the Appellant's final decision.

## II.

■ The first issue concerns the circuit court's ruling "[t]hat the respondent [Secretary of State] made no specific pleading addressing the allegations of the petitioner in his Petition for Judicial Review, and that the allegations must, therefore, be taken as true." The Appellant argues that there is no statutory provision which requires the Appellant to file a responsive pleading unless directed to do so by the circuit court. The Appellee maintains that the circuit court was merely acknowledging the fact that since no responsive pleading was filed, great weight was given to the allegations and representations in the petition because there was nothing submitted before the court to dispute the contents of the petition.

West Virginia Code § 29A-5-4(e) and (f) (1993) provide:

---

1. The Appellee objected to the appointment of Mr. Wilkinson as the hearing examiner on the grounds that he served as a Deputy Secretary of State and would make his recommendation, as hearing examiner, directly to the Secretary of State.

2. Additionally, some eighteen exhibits, stipulated by both parties as being authentic, were offered in evidence without objection.

(e) Appeals taken on questions of law, fact or both, shall be heard upon assignments of error filed in the cause or set out in the briefs of the appellant. Errors not argued by brief may be disregarded, but the court may consider and decide errors which are not assigned or argued. The court or judge shall fix a date and time for hearing on the petition, but such hearing, unless by agreement of the parties, shall not be held sooner than ten days after the filing of the petition, and notice of such date and time shall be forthwith given to the agency.

(f) The review shall be conducted by the court without a jury and shall be upon the record made before the agency, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken before the court. The court *may* hear oral arguments and *require written briefs.* (emphasis added).

These statutory provisions clearly indicate that the Appellant was not required to submit a responsive pleading to the Appellee's petition for judicial review or address the errors raised by the Appellant's brief *unless* the lower court "require[d] written briefs." W.Va.Code § 29A–5–4(f). The lower court's decision in this case should have been based solely upon the record submitted by the Appellant and the Appellee's brief, since the record is clear that the lower court did not request briefs from the parties.

Additionally, there is no provision within the statute which indicates that the failure to submit a responsive pleading will result in the admission of the contents of the petition for judicial review as being true. An administrative appeal is not a complaint and the failure to submit a responsive pleading cannot be equated to the failure to file an answer, the latter of which would result in a judicial admission as to the facts of the complaint. *See* W.Va.R.Civ.P. 8(d). As a matter of fact, West Virginia Rule of Civil Procedure 8(d) specifically provides, in pertinent part, that "[a]verments in a pleading to which no responsive pleading is required or permitted *shall* be taken as denied or avoided." (emphasis added).

■ Consequently, we hold that West Virginia Code § 29A–5–4 only requires the submission of a responsive pleading in an appeal of a contested administrative case where the circuit court specifically orders that such pleading be filed. Where the circuit court does not require the filing of a responsive pleading, the averments contained within the petition for judicial review shall be taken as denied or avoided.

In this case, the lower court erroneously concluded that the Appellant's failure to file a responsive pleading, which had not been ordered, resulted in the allegations contained within the petition for judicial review being taken as true.

### III.

■ The next issue concerns whether the trial court erred in concluding "[t]hat the use of a Deputy Secretary of State ... as a Hearing Examiner for the purpose of an appeal of the Secretary of State's recommendation ... amounts to an inherent conflict of interest which violates the requirement of West Virginia Code 29A–5–1(d) [ (1993) ] requiring that all hearings shall be conducted in an impartial manner." The Appellant maintains that the hearing was conducted in an impartial manner and that it was proper for the Deputy Secretary of State, Mr. Wilkinson, to serve as the hearing examiner pursuant to statute. The Appellee asserts that the court was justified in making a determination that an inherent conflict of interest existed and that the agency should have obtained a hearing examiner who was not connected with the case in any way.

It is apparent that both the trial court and the Appellee have neglected to consider the pertinent statutory provision. West Virginia Code § 29A–5–1(d) specifically provides that:

All hearings shall be conducted in an impartial manner. *The agency, any member of the body which compromises the agency,* or any hearing examiner or other person permitted by statute to hold any such hearing for such agency, and duly authorized by such agency so to do,

shall have the power to: (1) Administer oaths and affirmations, (2) rule upon offers of proof and receive relevant evidence, (3) regulate the course of the hearing, (4) hold conferences for the settlement or simplification of the issues by consent of the parties, (5) dispose of procedural requests or similar matters, and (6) take any other action authorized by a rule adopted by the agency in accordance with the provisions of article three [29A–3–1 et seq.] of this chapter. (emphasis added).

While the use of the term "agency" in the statute does not reflect a legislative intent to allow everyone on an agency payroll to be designated as hearing examiners, it certainly reflects a legislative intent "that the people at the top [of a given agency] are entitled to serve as presiding officers in contested cases...." Alfred S. Neely, IV, *Administrative Law in West Virginia* § 5.26 at 320 (1982). Further, in *Eddy v. West Virginia Board of Optometry*, 116 W.Va. 698, 182 S.E. 870 (1935), this Court addressing a conflict of interest matter concerning the Board of Optometry stated that " '[t]he maxim that no man shall be judge in his own case "applies to judicial officers, but not to officers whose duties partake of an administrative character, and are only quasi-judicial." ' " *Id.* at 700, 182 S.E. at 871 (quoting *Throop on Public Officers*, § 617). Finally, all that the statute clearly mandates is that the hearing be conducted "in an impartial manner." W.Va.Code § 29A–5–1(d).

■ If the lower court's interpretation of West Virginia Code § 29A–5–1 were accepted, no state agency could ever conduct an administrative hearing without a potential claim of conflict of interest arising. Moreover, the statute provides for judicial review to ensure that the hearing was conducted in an impartial manner. *See* W.Va. Code § 29A–5–4. Thus, we hold that by its express terms, West Virginia Code § 29A–5–1(d) permits an administrative agency to designate any member within the agency to preside as a hearing examiner and requires that such hearing be conducted in an impartial manner. No inherent conflict of interest is created simply because such agency member serves as a hearing examiner.

Not only is a Deputy Secretary of State a member of the agency, he may also be considered one of the top people within the agency. Moreover, the hearing examiner was only acting in a quasi-judicial capacity, which as this Court noted in *Eddy*, is not the same as a judge acting in a judicial capacity when it pertains to conflicts of interest. Finally, a review of the hearing transcript indicates that the hearing examiner did conduct the hearing in a fair and impartial manner and the Appellee has failed to produce any evidence to the contrary, other than the fact that the hearing examiner was a Deputy Secretary of State. Therefore, we find that the lower court erred in ruling that an inherent conflict of interest existed.

## IV.

■ The next issue concerns the trial court's conclusion that "[a] review of the Hearing Examiner's report and the final decision in this case clearly shows no discussion or ruling made by the Administrative Agency that would be sufficiently clear to assure a reviewing court that all those findings proposed by petitioner had been considered and dealth [sic] with, not overlooked or concealed." The Appellant argues that the hearing examiner and the Appellant did make some seventeen findings of fact and eight conclusions of law. Moreover, the Appellee's proposed findings of fact and conclusion of law were all either specifically or impliedly addressed by the Appellant in the final order. The Appellee maintains that his proposed findings of fact were left unaddressed.

■ West Virginia Code § 29A–5–3 (1993) provides, in pertinent part, that

Every final order or decision rendered by any agency in a contested case ... shall be accompanied by findings of fact and conclusions of law. Prior to the rendering of any final order or decision, any party may propose findings of fact and conclusions of law. If proposed, all other parties shall be given an opportuni-

ty to except to such proposed findings and conclusions, and the final order or decision shall include a ruling on each proposed finding.

In *St. Mary's Hospital v. State Health Planning and Development Agency,* 178 W.Va. 792, 364 S.E.2d 805 (1987), this Court interpreted the above-mentioned statutory language and held, in syllabus point 4, that

> The requirement of West Virginia Code § 29A–5–3 that an administrative agency rule on the parties' proposed findings is mandatory and will be enforced by the courts. Although the agency does not need to extensively discuss each proposed finding, such rulings must be sufficiently clear to assure a reviewing court that all those findings have been considered and dealt with, not overlooked or concealed.

The record in the present case clearly reveals that both the hearing examiner and the Appellant "considered and dealt with" the Appellee's proposed findings of fact. *Id.* This is implicitly indicated in the Appellant's findings of fact and conclusions of law contained within the final order and explicitly indicated when the Appellant states within the final order that "[t]he following proposed findings of fact are adopted from Cecil Varney's Proposed Findings of Fact." Since the Appellant's rulings contain sufficiently clear indicia that the Appellee's proposed findings of fact were not "overlooked or concealed," this Court concludes that the lower court erred in its ruling concerning this matter. Syl. Pt. 4, *St. Mary's Hosp.,* 178 W. Va. at 794, 364 S.E.2d at 807.

## V.

■ We summarily conclude that the lower court erred in holding that the Appellant failed to send the final decision to the Appellee by certified mail pursuant to West Virginia Code § 29A–5–3 and in holding that matters outside the record were considered in the Appellant's final decision.

First, the Appellee alleged, before the Appellant's final order was even entered, that he was not sent a copy of the final order by certified mail.[3] The Appellee had received his copy of the hearing examiner's report by regular mail. This report was not the final decision and there is no corresponding statutory requirement that such a report be sent certified mail. Finally, there is no evidence in the record that was before the lower court that the final decision was not sent by certified mail.

■ Next, the circuit court's conclusion that the Appellant considered matters outside the record on rendering a final decision is based solely on the following language found in the Appellant's final order: "I have conducted an independent review of the entire file and adopt the following findings of fact and conclusions of law." Relying solely on this statement, the circuit court concluded that items not admitted in evidence by the hearing examiner were considered by the Appellant. A review of the entire record before this Court, however, including the hearing examiner's report and the final decision, indicates that this simply was not the case. Moreover, the Appellant also states in his final order that his decision is "based on all of the evidence placed before me in this case." There was nothing contained within the final decision which substantiates the circuit court's conclusion that matters outside the record were in any way considered by the Appellant in rendering his final decision.

Based upon the foregoing, the decision of the Circuit Court of Mingo County is hereby reversed and remanded to the circuit court with directions to enter an order reinstating the Appellant's June 12, 1991, final decision.

Reversed and remanded with directions.

**3.** The Appellee filed his appeal with the circuit court on May 29, 1991, and the Appellant tendered his final decision on June 12, 1991.