IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 21-0166

_____

**FILED**

**May 6, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

DONNA S.,
Petitioner Below,
Petitioner,

v.

TRAVIS S.,
Respondent Below,
Respondent.

_____

Appeal from the Circuit Court of Mercer County
The Honorable Derek C. Swope, Judge
Civil Action No. 19-D-97

AFFIRMED

_____

Submitted: March 1, 2022
Filed: May 6, 2022

Anthony R. Veneri, Esquire
Veneri Law Offices
Princeton, West Virginia
Counsel for Petitioner

David R. Karr, Jr., Esquire
Charleston, West Virginia
Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE BUNN did not participate in the decision of this case.

SYLLABUS BY THE COURT

1.      "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*."  Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

2.      "It is always to be presumed that the Legislature designed the statute to take effect, and not to be a nullity."  Syllabus Point 2, *Slack v. Jacob*, 8 W. Va. 612 (1875).

3.      "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."  Syllabus Point 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

4.      "A meeting of the minds of the parties is a *sine qua non* of all contracts."  Syllabus Point 1, in part, *Burdette v. Burdette Realty Improvement, Inc.*, 214 W. Va. 448, 590 S.E.2d 641 (2003).

Armstead, Justice:

Donna S. ("Petitioner") appeals the Circuit Court of Mercer County's order which affirmed the Family Court of Mercer County's order setting aside a Mediated Settlement Agreement ("MSA") between Petitioner and Travis S. ("Respondent") on the grounds that it was unenforceable because there was no meeting of the minds. After review of the briefs and arguments of the parties, and all other matters of record, we affirm the circuit court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties to this action were married on August 19, 2000, and two children were born of the marriage. On February 15, 2019, Petitioner filed for divorce in Mercer County, West Virginia, on the grounds of irreconcilable differences. On May 15, 2019, the family court granted the parties joint custody of the children and named Petitioner as the primary residential parent, utilizing the statutory child support formula to determine child support responsibilities. Thereafter, on November 6, 2019, the family court entered an "Agreed Bifurcated Order of Divorce." This bifurcated order directed the parties to engage in mediation to attempt to reach an agreement on the equitable distribution of the marital estate, appointed a guardian *ad litem* for the children, granted Petitioner a name change, and set the matter for another hearing following mediation to finalize equitable distribution.

1

After entry of the bifurcated order, the parties participated in mediation and entered into the MSA that gives rise to this action. This MSA detailed the equitable distribution of marital property, including the marital residence. Pertinent to this appeal, the MSA also included the parties' agreement to transfer three acres of marital property to Respondent's parents.[1] In exchange, Respondent agreed that his parents would transfer a right of way across the parents' land to Petitioner. This was memorialized in the December 17, 2019, Corrected Agreed Final Bifurcation Order:

> 8. The parties agree that they will deed [three] acres of the marital real estate to [Respondent's parents] as discussed and specifically agreed to in the mediation. The parties agree to have an independent surveyor to survey the [three] acres to obtain a legal description and [Respondent's parents] have agreed to pay the surveyor to survey the [three] acres to obtain the legal description and costs of the deed and transferring the property to them.

> 9. [Respondent] will have a right of way deeded to [Petitioner] to her home. As part of the transaction, [Respondent] shall pay for the preparation and conveyance of the right of way to the property.

Following entry of the Corrected Agreed Final Bifurcation Order, the parties endeavored to divide the property according to its terms. However, Petitioner filed a petition for contempt on March 26, 2020, alleging Respondent refused to execute a deed transferring the marital home, refused to convey his ownership interest in the three acres of marital property to Respondent's parents, and refused to have a survey of the three acres.

---

[1] The parties agree that Respondent made a rough sketch of the area to be conveyed to his parents at the mediation. This sketch was estimated to contain three acres. The mediator took possession of the sketch and ultimately destroyed it as a matter of course. Thus, that rough sketch no longer exists.

2

Respondent's response[2] sought modification of the MSA for various reasons. First, Respondent alleged that the conveyance of the three acres involved his parents, who were not parties to the action.[3] Second, Respondent argued that Petitioner had "defected from the agreement reached with [Respondent's parents]." Third, Respondent alleged that the MSA should be rendered void due to uncertainty based upon the lack of agreement as to the size and location of the three acres.

The family court conducted a hearing on these issues. During that hearing, the family court took testimony from Petitioner and Respondent and heard detailed argument from their counsel. Following this hearing, the family court concluded that the parties did not have a "meeting of the minds" in reaching the MSA and determined that the entirety of the MSA was unenforceable, specifically finding as follows:

> 7.      The Court concludes:
>
> a.      There was no meeting of the minds with respect to the overall [MSA] which was attached to and incorporated into the Corrected Agreed Final Bifurcation Order, entered on December 17, 2019.

---

[2] The response was contained as part of a Petition for Modification. As the other issues raised in that Petition are not relevant to this appeal, they are not discussed herein.

[3] We note that the parents filed a petition to intervene in the divorce proceeding, which was denied by the family court. Also, pending in the circuit court is a declaratory judgment action filed by the parents regarding the alleged easement. From the record, the declaratory judgment action was set for a bench trial on March 31, 2021. We do not know the outcome, if any, of that action.

b.      The diagram of the real estate to be transferred to [Respondent's] parents is unavailable to the Court because the mediator destroyed it.

c.      The [MSA] made an attachment (Exhibit A) to the Corrected Agreed Final Bifurcation Order is hereby FOUND and CONCLUDED to be UNENFORCEABLE as a contract or other agreement and VOID to that effect.

d.      The clear and sole purpose of the Corrected Agreed Final Bifurcation Order was the ratification, adoption[,] and enforcement of the [MSA].

e.      The December 17, 2019, Order in this matter, and in particular the nineteen (19) several specific terms of that Order putting into effect the [MSA] should be and hereby are VACATED and SET ASIDE.

8.      Based upon the conclusions and ruling that the parties did not have a meeting of the minds, [Petitioner's] petition for contempt pending against [Respondent] is hereby DENIED and the same is hereby DISMISSED with prejudice.

9.      The vacation of the December 17, 2019, Order in this matter and the complete rejection of the [MSA] as a property settlement agreement, therefore, fully REINSTATES this Court's jurisdiction as it existed on and before December 17, 2019, with respect to its duty to perform equitable distribution of the parties' marital property.

10.     The Court shall take up this matter for an all-day hearing for consideration of the parties' contested presentation of evidence on equitable distribution of the parties' marital property. . . .

Petitioner then appealed the family court's ruling to the circuit court arguing that there was a meeting of the minds, that there was no timely appeal of the Corrected Agreed Bifurcation Order, and that the entire MSA should not be rendered void. However, the circuit court disagreed and affirmed the family court's decision. The circuit court held:

4

The provisions of the [MSA] surrounding the proposed easement, and the term obligating [Respondent's parents] to pay for the surveying of the disputed three acres, are illusory promises. These terms are illusory because they create an obligation to third parties who are not bound by the [MSA]. The presence of these illusory terms renders the formation of the [MSA] defective. The [f]amily [c]ourt cites this in the written order and makes mention of it on the electronic record wherein the [f]amily [c]ourt found that there was "no meeting of the minds" because the [MSA] obligated nonparties to the contract. Therefore, the [c]ourt finds that the [f]amily [c]ourt did not abuse its discretion in finding that the [MSA] lacked mutual assent.

It is from the circuit court's order affirming the family court's decision to set aside the MSA that Petitioner appeals.

## II. STANDARD OF REVIEW

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

## III. ANALYSIS

Petitioner essentially raises two arguments in support of her position. First, she alleges that the family court lacked jurisdiction to reconsider its Corrected Agreed Final Bifurcation Order and then invalidate the MSA. Second, Petitioner maintains that the

5

family court should have only invalidated portions of the MSA, enforced the remaining provisions, and held a hearing solely on the invalid portions of the MSA.

I.      Jurisdiction

Under our law, "a family court has the right and authority to adjudicate actions for divorce and the power to carry its judgment and order into execution." W. Va. Code § 48-5-102 (2001). This jurisdiction includes actions for divorce and proceedings for property distribution. *See* W. Va. Code § 51-2A-2 (2018). Division of marital property shall be equitable. *See* W. Va. Code § 48-7-101 (2001). Parties to a divorce may agree to an MSA that provides for equitable distribution of marital property and a family court may accept such agreements and incorporate them into a final order. Rule 44, *W. Va. R. Fam. Ct.*[4]

---

[4] Rule 44 of the Rules of Practice and Procedure for Family Courts provides:

> Upon receipt of a mediated agreement the court shall review the agreement to determine if it is knowing, voluntary, and in the best interests of the parties' children. The court shall cause the child support formula to be calculated based on the allocation of custodial responsibility in the parenting plan contained in the mediated agreement; and by way of comparison, shall cause the child support formula to be calculated in accordance with W. Va. Code, §§ 48-13-401 to 404, 501, and 502. After being informed on the record of the mediated agreement's child support implications, if the parties assent to the agreement on the record, and if the court determines there is no impediment to the validity of the agreement, the court shall incorporate the mediated agreement in an order.

6

Once a final divorce order has been entered, family courts may modify that final order in certain situations:

> In modifying a final divorce order, the court may, when other means are not conveniently available, alter any prior order of the court with respect to the distribution of marital property, if:
>
> (1) The property is still held by the parties;
>
> (2) The alteration of the prior order as it relates the distribution of marital property is necessary to give effect to a modification of spousal support, child support or child custody; or
>
> (3) The alteration of the prior order as it relates the distribution of marital property is necessary to avoid an inequitable or unjust result which would be caused by the manner in which the modification will affect the prior distribution of marital property.

W. Va. Code § 48-5-706 (2001). Petitioner argues that the "or" at the end of subsection (2) is a drafting error by our Legislature and it should be read as an "and," requiring all three conditions to be met before a family court can modify a final order.[5] In support of this position, Petitioner points us to the case of *Segal v. Beard*, 181 W. Va. 92, 380 S.E.2d 444 (1989). As we discuss below, we disagree and decline to write into the statute that which the Legislature did not.

---

[5] Respondent urges this court to apply the provisions of Rule 60 of the West Virginia Rules of Civil Procedure to affirm the family court and circuit court. However, we believe West Virginia Code § 48-5-706 is directly on point.

"It is always to be presumed that the Legislature designed the statute to take effect, and not to be a nullity." Syllabus Point 2, *Slack v. Jacob*, 8 W. Va. 612 (1875). "'[T]he Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning,' *State ex rel. Johnson v. Robinson*, 162 W. Va. 579, 582, 251 S.E.2d 505, 508 (1979)[.]" *Stone v. United Eng'g, a Div. of Wean, Inc.*, 197 W. Va. 347, 355, 475 S.E.2d 439, 447 (1996). *See also Bullman v. D & R Lumber Co.*, 195 W. Va. 129, 133, 464 S.E.2d 771, 775 ("[E]very word used is presumed to have meaning and purpose, for the Legislature is thought by the courts not to have used language idly."). Even so, Petitioner urges this Court that the Legislature committed a clerical error and it is this Court's duty to correct it. We acknowledge we have the authority in limited circumstances to correct statutory clerical errors. "Clerical errors in a statute will be disregarded, or read as corrected, where the true intention of the Legislature is manifest from the language used and the purpose sought to be attained." Syllabus Point 1, *Anderson v. Town of Friendly,* 86 W.Va. 554, 104 S.E. 48 (1920). There are a number of examples of clerical errors this Court has corrected. *See St. Mary's Hosp. v. State Health Planning and Dev. Agency*, 178 W. Va. 792, 796 n.3, 364 S.E.2d 805, 809 n.3 (1987) (incorrect citation to another statute); *McClanahan v. Putnam County Com'n*, 174 W. Va. 478, 482, 327 S.E.2d 458, 462 (1985) (correcting a clear transcription error from the then-existing Uniform Vehicle Code); *Boggess v. Workers' Compensation Div.*, 208 W. Va. 448, 453, 541 S.E.2d 326, 331 (2000) (List contained in a Legislative Rule was misnumbered).

Here, there is no evidence demonstrating a clerical mistake, as Petitioner urges us to find. In fact, the entirety of Chapter 48 of the West Virginia Code was recodified in 2001. *See* W. Va. Code § 48-1-101 (2001) ("The recodification of this chapter during the regular session of the Legislature in the year 2001 is intended to embrace in a revised, consolidated, and codified form and arrangement the laws of the State of West Virginia relating to domestic relations at the time of that enactment."). In the West Virginia Code as it read immediately prior to the 2001 revision, the general provisions now contained in West Virginia Code § 48-5-706 were found in West Virginia Code § 48-2-15 (1999), which provided:

> In granting relief under this subsection, the court may, when other means are not conveniently available, alter any prior order of the court with respect to the distribution of marital property, if such property is still held by the parties, and if necessary to give effect to a modification of alimony, child support or child custody *or* necessary to avoid an inequitable or unjust result which would be caused by the manner in which the modification will affect the prior distribution of marital property.

W. Va. Code 48-2-15(e) (1999) (emphasis added) *superseded by statute*, W. Va. Code § 48-5-706 (2001). In comparing these two enactments, the Legislature left the disjunctive "or" in the same location in the 2001 reenactment as where it was located in the prior enactment.

Turning to Petitioner's argument regarding *Segal*, a case that interpreted an even earlier version of 48-2-15(e) (1986), we find it to be inapplicable to the current version of the statute. *Segal* held that the subsection allowing for modification of divorce decrees

9

only applies to modifications for alimony, child support and child custody. *See* Syllabus

Point 2, *Segal*. The Court in *Segal* reached this conclusion:

> [B]y giving effect to the words at the beginning of the second sentence, referring to the relief authorized by the first sentence: "In granting such relief, ..." The remainder of the second sentence, including the language relied upon by the appellee, is thus expressly hinged upon a modification involving alimony, child support or child custody, and the redistribution of the former marital property, if still held by the parties, is allowed either to (1) *give effect to* a modification of alimony, child support or child custody or to (2) *avoid* an *inequitable* or unjust *result* which would be caused by the manner in which the *modification of alimony, child support or child custody* will affect the prior distribution of the former marital property.

*Segal*, 181 W. Va. at 98, 380 S.E.2d at 450 (emphasis in original). In 1990, the Legislature,

following this Court's opinion in *Segal*, amended the statute and removed the language

"[i]n granting such relief," replacing that language with "[i]n granting relief under this

subsection," completely eliminating the word "such." *Compare* W. Va. Code § 48-2-15(e)

(1986) *with* W. Va. Code § 48-2-15(e) (1990). This change was carried forward to the

1999 provision quoted above. *See* W. Va. Code § 48-2-15(e) (1999). Further, this language

was completely removed from the 2001 recodification, also quoted above. *Compare* W.

Va. Code § 48-5-706 (2001) *with* 48-2-15(e) (1986) *and* W. Va. Code § 48-2-15(e) (1990).

The Legislative history leads us to the conclusion that *Segal* does not support the

proposition urged by Petitioner and that the provisions of West Virginia Code 48-5-706

are not limited to modifications involving alimony, child support, or child custody.

10

Having declined to find and correct an alleged clerical mistake in West Virginia Code § 48-5-706, and having further concluded that its application is not limited to modifications involving alimony, child support, or child custody, we now apply the rules of statutory construction. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). *See also* Syllabus Point 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953) ("The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature."). Accordingly, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syllabus Point 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

Based upon our analysis of the statute in question, we reach the inescapable conclusion that the clear and unambiguous provisions of West Virginia Code § 48-5-706 (2001) provide a family court jurisdiction to modify a final divorce decree if any of the requirements contained in its subsections are met. Here, the family court had jurisdiction to modify the divorce decree under the catch-all provision contained in subsection (3) because the inability to consummate the exchange of the three acres for the right of way directly impacts the equitable distribution of marital property.

II.     Mediated Settlement Agreement

11

Having found that the family court had jurisdiction to set aside the MSA, we now analyze whether the entire MSA should have been set aside, as was done by the family court and affirmed by the circuit court, or whether, as Petitioner urges, only the invalid portions of the agreement should be relitigated, leaving the other portions of the MSA undisturbed.

On this issue, the family court found there was no meeting of the minds and the circuit court agreed. The circuit court accordingly found that the promises requiring Respondent's parents – who were not parties to the divorce – to transfer a right of way to Petitioner and to pay the costs associated with transferring the three acres from the marital estate to them rendered the entire agreement illusory. We agree with the lower tribunals. We have stated:

> A promise becomes consideration for another promise only when it constitutes a binding obligation. Unlike a binding obligation, an "illusory promise" appears to be a promise, but it does not actually bind or obligate the promisor to anything. Because an illusory promise is not binding on the promisor, an illusory promise cannot constitute consideration. *Hill v. Peoplesoft USA, Inc.,* 412 F.3d 540, 543 (4th Cir. 2005).

*Toney v. EQT Corp.,* No. 13-1101, 2014 WL 2681091, at *4 (W. Va. June 13, 2014) (memorandum decision). "If one party to a contract is not bound to do the act which forms the consideration for the promise, undertaking, or agreement of the other, the contract is void for want of mutuality." Syllabus Point 5, *Eclipse Oil Co. v. S. Penn Oil Co.*, 47 W. Va. 84, 34 S.E. 923 (1899). *Accord* Samuel Williston & Richard A. Lord, *Williston on Contracts* § 7.7 (4th ed 2008) ("Where an illusory promise is made, that is, a promise

12

merely in form, but in actuality not promising anything, it cannot serve as consideration. Even if it were recognized by law, it would impose no obligation, since the promisor always has it within his power to keep his promise and yet escape performance of anything detrimental to himself or beneficial to the promisee.").

Further, "[a] meeting of the minds of the parties is a *sine qua non* of all contracts." Syllabus Point 1, in part, *Burdette v. Burdette Realty Improvement, Inc.*, 214 W. Va. 448, 590 S.E.2d 641 (2003). "[A] court may only enforce a settlement when there has been a definite meeting of the minds." *State ex rel. Evans v. Robinson,* 197 W.Va. 482, 485, 475 S.E.2d 858, 861 (1996), *cert. denied,* 519 U.S. 1121 (1997). Similarly, in *Riner v. Newbraugh*, 211 W. Va. 137, 144, 563 S.E.2d 802, 809 (2002), we stated, "[i]t is well-understood that '[s]ince a compromise and settlement is contractual in nature, a definite meeting of the minds of the parties is essential to a valid compromise, since a settlement cannot be predicated on equivocal actions of the parties." (internal citation omitted).

The purpose of mediation is for the parties to the dispute to give up something in exchange for something else to reach a resolution of their disagreements. Here, no party to the agreement had the authority to transfer the right of way. Respondent's parents were not parties to the divorce and the family court had no mechanism to enforce the agreement against the parents. Nonetheless, Petitioner urges that the parents are third-party beneficiaries and that the MSA is binding upon them, citing us to the case of *Eastern Steel*

13

*Constructors, Inc. v. City of Salem*, 209 W. Va. 392, 549 S.E.2d 266 (2001). However, we do not believe this case supports Petitioner's position as its holdings apply to special relationships between design professionals and contractors, clearly inapplicable in this matter. *See* Syllabus Points 6, 7, and 9, *id.* Further, the facts show that Respondent's parents were not third-party beneficiaries to the MSA. They were an integral part of the consideration of the parties' agreement, yet as non-parties to such agreement, could not be bound by its terms.

A third-party beneficiary may enforce a contract only if it is made for its sole benefit:

> If a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise.

W. Va. Code § 55-8-12 (1923). To establish a person as a third-party beneficiary to a contract, we have held, "[w]here plaintiff seeks recovery as a third party beneficiary under a contract to which he is not a party under W.Va. Code, 55-8-12 (1923), it is necessary that plaintiff demonstrate that the contracting parties intended to confer a benefit upon the plaintiff by their contract." Syllabus Point 2, *Woodford v. Glenville State Coll. Hous. Corp.*, 159 W. Va. 442, 225 S.E.2d 671 (1976). "The fundamentals of a legal "contract" are competent parties, legal subject–matter, valuable consideration, and mutual assent. There can be no contract, if there is one of these essential elements upon which the minds

14

of the parties are not in agreement." Syllabus Point 5, *Virginian Exp. Coal Co. v. Rowland Land Co.*, 100 W. Va. 559, 131 S.E. 253 (1926). "While the promise of a third-party beneficiary to a contract may serve as the requisite consideration to form a binding contract . . . that conclusion is premised on such consideration being bargained for in exchange for the return promise." *State ex rel. Saylor v. Wilkes*, 216 W. Va. 766, 776, 613 S.E.2d 914, 924 (2005).

> The promise of a party to a contract, in order to be a good consideration for the undertaking of the other party thereto, must be such as to impose a legal liability. Where the promise relied upon as constituting the consideration for the contract does not impose any legal liability upon the promisor, it will not ordinarily be held to be a sufficient consideration on the part of the other party.

Syllabus Point 2, *Banner Window Glass Co. v. Barriat*, 85 W. Va. 750, 102 S.E. 726 (1920).

Even if there was consideration in the MSA for the exchange, the provisions in the MSA were not made for Respondent's parents' sole benefit. Its purpose was to equitably divide the marital estate between the parties to the divorce. The illusory promise to transfer three acres to the parents in exchange for their conveyance of the right of way was integral and inextricably intertwined as part of the consideration for the entire MSA and the requirement that Respondent's parents convey a right of way they solely owned to Petitioner and pay the sundry costs associated with the transfer of the three acres was to the parents' detriment. Accordingly, the parents are not third-party beneficiaries as they

15

were required to give up something in the MSA rather than benefitting from it, making them an integral part of the bargained-for exchange forming the MSA.

Because we agree with the lower tribunals that the MSA was invalid, we note our law requires equitable distribution of marital assets. Where, as here, the conveyance of the land and right of way were integral parts of the overall MSA, we are unable to conclude that the remaining portions can stand alone. Without making such determination at this stage, we recognize that any modification or removal of the land agreements from the MSA may also require modification of the remaining terms of the MSA in order to ensure an equal distribution of the marital property. "Except as provided in this section, upon every judgment of annulment, divorce or separation, the court shall divide the marital property of the parties equally between the parties." W. Va. Code § 48-7-101 (2001). "In order to achieve the equitable distribution of marital property, the court shall, *unless the parties otherwise agree*, order, when necessary, the transfer of legal title to any property of the parties. . . ." W. Va. Code § 48-7-105 (2001) (emphasis added). We have previously held that:

> "'Equitable distribution ... is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in [former] W.Va. Code, 48-2-32 [now W.Va. Code § 48-7-103].' Syllabus Point 1, *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990)." Syl. Pt. 2, *Stuck v. Stuck*, 218 W.Va. 605, 625 S.E.2d 367 (2005).

16

Syllabus Point 3, *Mulugeta v. Misailidis*, 239 W. Va. 404, 801 S.E.2d 282 (2017). We have also held that, "[t]he burden is on both parties to the litigation to adduce competent evidence on the values to be assigned in equitable distribution cases." Syllabus Point 8, *Mayhew v. Mayhew*, 197 W. Va. 290, 475 S.E.2d 382 (1996), *overruled on other grounds by Mayhew v. Mayhew*, 205 W. Va. 490, 519 S.E.2d 188 (1999).

Clearly, family courts have a duty to ensure that a division of marital assets is equitably accomplished. If the Court were to accept Petitioner's argument that the remainder of the MSA should be enforced and only the illusory portions be litigated, such could result in an unequitable resolution of the distribution of marital property as the entire MSA represented the parties' bargained-for exchange. Thus, the family court was obligated to reopen the entire distribution of marital assets to recalculate equitable distribution.

## IV. CONCLUSION

For the forgoing reasons, we affirm the circuit court.

Affirmed.

17